# W. T. WAGGONER ESTATE et al. v. WICHITA COUNTY et al.

(Circuit Court of Appeals, Fifth Circuit. January 28, 1925.)

## No. 4379.

1. **Mines and minerals** ⬅79(1)—**Lessor held owner of that part of oil reserved as royalty, both before and after production.**

Under an oil lease requiring the lessee to deliver one-eighth of all oil produced and saved to the lessor in the pipe line as royalty, the lessor remains the owner of that part of the oil, both before and after it is brought to the surface.

2. **Taxation** ⬅63—**Oil in place is taxable as "real property."**

The property right of a lessor in mineral oil in or under the land owned by him is taxable as "real property," under Vernon's Sayles' Ann. Civ. St. Tex. 1914, art. 7504.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Real Property.]

**3. Taxation ⟨⟩438—Transfer of property from personal to real property tax roll held not prejudicial to owner.**

Under Vernon's Sayles' Civ. St. Tex. 1914, art. 7702, authorizing correction of tax rolls of real property, transfer of an item by the commissioners' court from the personal property roll to the real property roll is not prejudicial to the owner, especially where he was heard on the question of valuation.

**4. Taxation ⟨⟩338—Method of assessing lessor's interest in oil in place held not arbitrary nor unfair.**

A method of assessing a lessor's interest in oil in place *held* not arbitrary nor unfair, as between the interests of lessor and lessee.

Appeal from the District Court of the United States for the Northern District of Texas; William H. Atwell, Judge.

Suit in equity by the W. T. Waggoner Estate and another against Wichita County and others. Decree for defendants, and complainants appeal. Affirmed.

For opinion below, see 298 F. 818.

Geo. Thompson, J. H. Barwise, Jr., and G. W. Wharton, all of Fort Worth, Tex. (Thompson, Barwise & Wharton and F. B. Walker, all of Fort Worth, Tex., and Joe B. Carrigan, of Wichita Falls, Tex., on the brief), for appellants.

T. R. Boone and E. W. Napier, both of Wichita Falls, Tex. (E. L. Fulton, E. T. Duff, and John B. King, all of Wichita Falls, Tex., on the brief), for appellees.

Before WALKER and BRYAN, Circuit Judges, and DAWKINS, District Judge.

WALKER, Circuit Judge. This is an appeal from a decree dismissing a bill in equity filed by the appellants, W. T. Waggoner, a citizen and resident of Tarrant county, Tex. (herein referred to as the lessor), and the W. T. Waggoner Estate, a trust or voluntary association created by written articles of agreement, to enjoin the enforcement or collection of a tax levied by the taxing authorities of Wichita county, Tex., for the year 1923, on so-called royalties under oil and gas leases, made by the lessor, of sundry tracts of land in that county, which lands were owned by the lessor on January 1, 1923, the date for the fixing of the 1923 taxes, and were, in March, 1923, conveyed, together with the lessor's interest in oil produced therefrom, to the other appellant.

Within the time prescribed by statute the lessor, for taxation purposes for the year 1923, rendered or returned to the tax assessor of Wichita county, on a form furnished by that official, an inventory of property. Following a descriptive list of parcels of land, a value of each parcel being stated, that instrument contained the following:

"Total number of producing wells, 143; royalty, 723 .............. $325,350."

In making up the rolls in the assessor's office, the just-mentioned item was put on the roll under the heading "Personal Property." After the lessor was given notice to appear before the equalization board to show cause why his valuation of that item should not be raised to $1,000 per barrel, and after he had by his agent appeared before the board and contested the valuation, the board raised the valuation of that item to $723,000. After this suit was brought, the tax assessor, in compliance with an order of the commissioners' court, prepared a supplemental or amended roll, putting that item on the real estate roll. By the terms of one of the oil and gas leases which are in question the lessor, for the recited consideration of a stated sum of money, "to be paid in oil produced from" a described tract of land, "granted, demised, leased, and let" to a named corporation that tract of land "for the sole and only purpose of drilling and mining for gas and oil." That instrument contained the following:

"Lessee agrees and binds himself to pay an annual rental of one dollar and fifty cents per acre until actual drilling is begun hereon, and failure to pay said rental when due, at the option of the lessor, shall void this lease.

"Subject to the terms and condition herein, this lease shall remain in full force and effect for a term of three years from date hereof, and as much longer as gas and oil are found and produced in paying quantities: Provided, however, no one well shall hold more than ten acres, in a square form, said well being the center thereof.

"In consideration of the premises, the lessee covenants and agrees:

"To deliver to the lessor, free of charge, in the pipe line to which said lease may be connected, the equal one-eighth part of all the oil and gas produced and (saved from) said premises, settlement to be made not later than the 10th day of each month for the preceding month.

"That the lessee will pay seven-eighths of all increase in taxes, by virtue of gas and oil, or either, that may be assessed against said premises.

"That the lessor shall have the refusal from time to time of all oil and gas, or either, produced hereon, at the posted price."

Other forms of leases in question do not differ in any material respect from the one just mentioned and quoted from.

[1] A principal contention in behalf of the appellants is that the property interest which is the subject of the tax in question is personal property, and is not taxable in a county other than that of the owner's residence. The maintenance of this contention involves giving to the leases in question the effect of sales and conveyances by the lessor of the oil contained in the land therein described. Minerals in place may be severed from the remainder of the land by appropriate conveyances. Humphreys-Mexia Co. v. Gammon, 113 Tex. 247, 254 S. W. 296, 29 A. L. R. 607. As to one-eighth of the oil in or under the land described, the leases contain no words of transfer or conveyance, or any language indicating that in any contingency the lessor was to cease to be the owner thereof, or that the lessee was to have, or be entitled to acquire, any right or title thereto. Each of those instruments had the effect of providing for a working arrangement for drilling and mining for gas and oil in or under described land, the lessee incurring the obligation "to deliver to the lessor, free of charge, in the pipe line to which said lease was to be connected, the equal one-eighth part of all the oil and gas produced and saved from said premises."

No provision was made for the lessee becoming the owner of the part of the oil produced which was required to be delivered to the lessor. In this respect the instruments in question are materially different from the one which was under consideration in the case of Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S. W. 290, 29 A. L. R. 566. By the terms of the instrument which was in question in that case the lessee was required to pay to the lessor 10 per cent. of the market price of gas produced, and, as to oil produced, the lessee was given the option of delivering one-eighth thereof to the lessor or paying to him the market price in cash thereof. It was held that that instrument gave the lessee therein dominion over the oil and gas in the land described.

[2] As above indicated, the leases in question in the instant case do not evidence a purpose to give to the lessees therein ownership, dominion of, or the right to dispose of the part of the oil produced which was required to be delivered to the lessor, and those instruments contain no provision under which the lessees could acquire or become entitled to that part of the oil produced. From the facts that, prior to the making of the leases now in question, the lessor was the owner of the oil in or under the land described, and that nothing contained in those instruments evidences the lessor's consent that the lessee have or retain as owner the part of the oil produced which the lessee was required to deliver to the lessor, it follows that the lessor was the owner of that part of the oil both before and after it was brought to the surface. His property right to mineral oil in or under land owned by him was taxable as real property. Vernon's Sayles' Taxes Civil Statutes 1914 Annotated, art. 7504.

[3] A Texas statute (Vernon's Sayles' Texas Civil Statutes 1914, art. 7702) provides for real property omitted from the real property tax roll in any year being listed thereon at any meeting of the commissioners' court. The property interest in question being identified by an entry in the list of property returned for taxation by the lessor, he and his assign could not have been prejudiced by the action of the commissioners' court in transferring that item of property assessed for taxation from the personal property roll to the real property roll, especially as the lessor had and availed himself of an opportunity to be heard on the question of the valuation to be placed on that item of property.

[4] The tax on the lessor's interest in the oil in or under the land was attacked on the ground that the valuation thereof was arbitrary, and that there was unjustifiable discrimination in the valuations placed on the respective interests in the oil of the lessor and the lessees. It was disclosed that the taxing authorities fixed the daily production of producing oil wells on the basis of their average daily production in barrels during a period of several months; that, after investigation and consideration of evidence on the subject, the value of a lessor's interest was fixed at $1,000 multiplied by the number of barrels received daily by the lessor, and the value of a lessee's interest was fixed at $450 multiplied by the number of barrels produced daily to which the lessee was entitled.

From the fact, disclosed by evidence adduced, that the total production in the year 1923 from wells on lands described in the leases in question was around 1,000 barrels a day, it may be inferred that the taxing authorities did not act arbitrarily or unjustly towards the lessor in fixing the daily production from his leased lands at 723 barrels. There was a substantial basis for the difference between the way adopted for arriving at the value of the lessor's interest in oil produced and that adopted for arriving

at the value of the lessee's interest, in that the lessee bore the loss of drilling "dry holes" and all of the expenses of finding oil and bringing it to the surface, while the lessor was at no expense with reference to the part of the oil which was required to be delivered to him. It was not made to appear that the methods adopted by the taxing authorities were lacking in uniformity or fairness to all persons similarly situated.

The conclusion is that on no ground suggested were the appellants entitled to the relief sought. The decree is affirmed.