HOGG et al. v. SHEFFIELD, Tax Collector, et al.

No. 9450.

Court of Civil Appeals of Texas. Galveston.

March 3, 1931.

Rehearing Denied April 9, 1931.

Stephen L. Pinckney and David M. Picton, Jr., both of Houston, for appellants.

A. R. Rucks, Floyd Enlow, and Carlos B. Masterson, all of Angleton, for appellee Brazoria County.

F. T. Baldwin and G. P. Dougherty, both of Houston, for appellees Texas Co. and Humble Oil & Refining Co.

PLEASANTS, C. J.

This suit was brought by appellants against the tax collector of Brazoria county, the county of Brazoria, two independent school districts, and a navigation district in said county, the commissioners' court, and all the officials of said county and districts having to do with the assessment of property for taxation and the collection of taxes in said county, to enjoin the collection of taxes levied and assessed upon one-eighth of the oil and other minerals in lands owned by appellants in said county for the year 1927:

Five private oil corporations engaged in the production of oil on the lands of appellants in the county were also made defendants.

Before the trial in the court below the state of Texas intervened in the suit and sought recovery against appellants for alleged delinquent taxes due for the year 1927, with interest, penalties, and costs.

The following sufficient summary of the substance of the pleadings is copied from appellants' brief:

Plaintiffs pleaded that in the year 1927, through their agent, they rendered to the tax assessor of Brazoria county, Tex., for taxation all of their real and personal property subject to taxation in Brazoria county, as shown upon written inventory and rendition, copy of which was attached to plaintiffs' petition and made part thereof; that said inventory and rendition contained a written statement on its face reciting that no oil, gas, sulphur, or other minerals in or under the lands covered by the Hogg-Hamman mineral deed or lease was being rendered for taxation because plaintiffs had conveyed such minerals to John Hamman in 1913; that defendant tax assessor accepted such renditions, and defendant commissioners' court, sitting as a board of equalization, approved the same and levied taxes on the property so rendered at values for which plaintiffs rendered the same, and plaintiffs paid all taxes levied against said property and against plaintiffs, before such taxes became delinquent; that plaintiffs did not render for taxation any oil, gas, sulphur, or other minerals in the lands covered by the Hogg-Hamman mineral deed or lease "for the reason that plaintiffs had sold and conveyed (and severed from their fee estate in said lands) all the minerals of every kind and character in such lands unto John Hamman by deed or lease dated June 6, 1913, recorded in" the deed records of Brazoria county, Tex., copy of such Hogg-Hamman mineral deed or lease being attached to plaintiffs' pleadings and made part thereof for all purposes; that said mineral deed or lease severed all the minerals in and under the surface of the lands therein described and conveyed all of said minerals out of plaintiffs unto John Hamman; that by virtue of assignments or subleases from John Hamman, the several oil company defendants held different portions of said property on January 1, 1927. Plaintiffs pleaded that as consideration for executing and delivering said Hogg-Hamman instrument, plaintiffs received the nominal sum of one dollar cash, and that the real considerations moving to plaintiffs for executing and delivering said instrument were the obligations on the part of

lessee John Hamman to drill wells on such lands for the purpose of discovering oil, gas, and other minerals, and in the event of discovery to produce the same and to deliver to plaintiffs a royalty payable in money upon gas, sulphur, and other minerals which might be produced, and to deliver to the credit of plaintiff in any pipe line or pipe lines designated by plaintiffs and which connect with the wells or settling tanks, free of any charge to plaintiffs, or into plaintiffs' own private storage at their expense, one-eighth of all the oil produced from such premises. Plaintiffs pleaded particularly section "Fifth" of such Hogg-Hamman instrument, which reads as follows:

"Fifth: (a) In consideration of this lease second party agrees that first parties shall have the following royalty of the gross production of all oil or gas wells on said lands, to-wit: one-eighth of all oil and one-eighth of all gas; and first parties' one-eighth royalty interest in all oil and gas marketed from said land to be paid over to them by second party at the end of each month, or whenever second party shall receive pay therefor, such royalty to be delivered by second party to the credit of first parties in any pipe-line or pipe-lines which said first parties may designate, and which connect with the wells or connect with the settling tanks of second party, free of any charge to first parties, or into said first parties' own private storage upon said land, or upon their other land adjoining, at the expense of said first parties; and first parties shall have one-eighth interest in all money realized from gas marketed from said land, as a royalty to be paid over to them, or their order, at the end of each month, or whenever second party shall receive pay therefor.

"(b) If sulphur or other minerals are produced on said land, second party shall pay first parties $1.00 per ton of 2240 pounds for each ton thereof produced and saved from said land; quarterly settlements to be made by second party with first parties by either the payment to them in person of proper amount or by its deposit to their credit in their bank, or its successor in business."

That under the terms of such Hogg-Hamman mineral deed or lease "plaintiffs had no title on January 1, 1927, or since, to any of the minerals in place and under the lands described in said deed, and were therefore not taxable in Brazoria County for any portion of said minerals."

Plaintiffs pleaded that the tax assessor of Brazoria county assessed for taxation in 1927 against them and the respective oil company defendants herein, said undivided one-eighth interest in the oil, gas, and other minerals in and under (in place in the ground) the lands described in said Hogg-Hamman mineral deed or lease; that in 1927 defendant commissioners' court levied taxes thereon against plaintiffs and said respective defendant oil companies jointly as the owners thereof. They also pleaded that the defendants tax officials of Brazoria county were threatening to proceed to collect said taxes by suit against plaintiffs; that unless the trial court issued writ of injunction to protect plaintiffs from such threatened and impending action and effort of such taxing officials to collect from plaintiffs said illegally assessed and levied taxes, plaintiffs would suffer irreparable loss and damages for which they had no adequate remedy at law, etc. Plaintiffs prayed for writ of injunction to restrain defendant Geo. W. Sheffield, tax collector of Brazoria county, and all other tax officials of said county, from collecting or attempting to collect from plaintiffs any part or all of said taxes assessed and levied for the year 1927 against said undivided one-eighth minerals involved in this litigation, or any interest, penalties, or attorney's fees accrued thereon. They also prayed "for all and every relief, both legal and equitable as well as general and special that they may be entitled to receive under law and in equity, and for all costs of suit."

Plaintiffs also pleaded in effect that if they owned on January 1, 1927, the one-eighth interest in and under the lands described in their petition and which was assessed for taxes for 1927 by the county of Brazoria against plaintiffs and the defendant oil companies jointly, such assessment was illegal, void, and unenforceable against plaintiffs, in that the valuation placed upon said one-eighth interest was knowingly and purposely fixed by the board of equalization at a much larger value proportionally than the seven-eighth interest in the minerals under said lands owned and assessed by the defendant oil companies; "(d) That said values were fixed for taxation purposes pursuant to a false, illegal and discriminatory policy, scheme, basis, rule, plan or method which was deliberately adopted and used by said Board in 1927 for that purpose; (e) that it was adopted and used generally for valuing all lessors' undivided interests and all lessees' undivided interests, in minerals in place in Brazoria County in 1927; (f) that said Board adopted and used said policy, scheme, basis, or method in valuing plaintiff's one-eighth undivided interest in minerals (and so declared in open Board meeting held in 1927, to which plaintiffs were cited to appear) because plaintiffs, as lessors, were entitled, under the provisions of the Hogg-Hamman mineral lease covering said lands, to have delivered to their credit in any pipe line designated by plaintiffs and attached to the wells on said premises, free of the cost of production thereof, one-eighth of the oil produced from said lands, whereas the defendants Oil Companies, as lessees, were obliged to incur the cost and expense of producing all of such oil; (g) that the ratio

of discrimination in valuations against plaintiffs and in favor of defendants Oil Companies resulting from the use of said illegal policy, scheme, basis, or method ranged from 1.71 times as much, proportionately, to 7 times as much; (h) that such illegal and discriminatory policy, scheme, or basis so adopted and used in 1927 is still in use by said Board for valuing such mineral properties in place, and unless such Board and other taxing officials were restrained they would continue to use it; (i) that such policy, scheme, or basis (and also the actions of said Board and other taxing officials of said county in consciously valuing plaintiffs' said properties excessively, arbitrarily, unequally and not uniformly by the use thereof) were illegal and discriminatory against plaintiffs and all other similar lessors or owners of royalty interests in minerals in place, and were also violative of section 1 of article 8 of the Constitution of Texas requiring that 'Taxation shall be equal and uniform and all property in this State, whether owned by natural persons or corporations, shall be taxed in proportion to its value, which shall be ascertained as may be provided by law,' and also violative of the 'due process' clause and the 'equal protection of the laws' clause of the Constitution of the United States, which provide that 'no State shall deprive any person of property without due process of law * * * nor deny to any person within its jurisdiction the equal protection of the laws'; (j) that said Board of Equalization in 1927 did not equalize the values of plaintiffs' said properties as they were required to do under the Constitution and laws of Texas; (k) that said false, arbitrary, illegal and discriminatory policy, scheme or basis of taxation as applied to lessors' royalty interests and to lessees' working interests in 'producing properties' consisted of ascertaining the average daily production of oil from a tract of land (averaged over the period of the first 90 days of the calendar year) and then multiplying one-eighth of such average daily production by $700.00 per barrel and using the product of such multiplication as the taxable values of such lessors' one-eighth undivided interest in said minerals in place, and multiplying the remaining seven-eighths of such average daily production of oil by $400.00 per barrel and using the product of that multiplication as the taxable value of the lessees' (defendants Oil Companies) seven-eighths undivided interest in said minerals; (1) that plaintiffs did not render said undivided one-eighth interest in minerals for taxation in 1927 but that the Tax Assessor of said county assessed the same for taxation in that year against plaintiffs and defendants Oil Companies, jointly; (m) that plaintiffs appeared at the 1927 meeting of the Board of Equalization to which they had been duly cited and offered evidence of the fair market value of their undivided one-eighth interest in said minerals in place, as well as of the whole of said minerals in place, as of January 1, 1927, and they protested in said open meeting to said policy, scheme or basis and also to such action of said Board of Equalization, both before and after the Board had fixed such excessive, illegal and discriminatory values upon plaintiffs' undivided one-eighth interest in such minerals at amounts grossly in excess of the highest values thereof that were shown by any of the competent evidence of fair market value introduced at said Board hearing, and grossly in excess of one-seventh of the values placed by said Board on the Oil Companies' seven-eighths undivided interests in such identical minerals. * * *"

Plaintiffs prayed for a writ of injunction to restrain defendants Geo. W. Sheffield, tax collector, and other tax officials of Brazoria county, from collecting or attempting to collect so much of the taxes assessed and levied in 1927 against plaintiffs as owners of the said several undivided one-eighth interests in oil, gas, and other minerals in place, as were excessive; and for all other relief, both general and special, legal and equitable, that plaintiffs might be entitled to receive under the law and in equity; and for costs of suit.

Plaintiffs did not pray for any specific relief against the defendants oil companies, who had been taxed jointly with plaintiffs in 1927 for the taxes herein sought to be enjoined, viz.: The Texas Company, Gulf Production Company, Humble Oil & Refining Company, Crown Oil & Refining Company, Hyde Production Company. The pleadings were duly verified by affidavit of plaintiffs' attorneys of record.

Defendants county of Brazoria and the officials thereof pleaded general demurrer and general denial. The defendants F. S. Crews, W. C. Phillips, G. W. Seibel, and Carlos Masterson filed general demurrer and general denial, and pleaded that they did not hold public offices in Brazoria county after January 1, 1929. Defendant Hyde Production Company defaulted in appearance, but the citation directed to such defendant with sheriff's return thereon showing good service on it is set forth in the transcript. Defendant Gulf Production Company filed plea in abatement, general demurrer, and general denial, and special exceptions.

The trial court sustained defendant Gulf Production Company's plea in abatement and dismissed it as a party from the suit, over plaintiffs' exception, before the case went to trial on its merits.

Defendant Humble Oil & Refining Company pleaded general demurrer, general denial, and specially that it had rendered in 1927 its seven-eighths interest in said properties that it held under sublease, and that the tax assessor had accepted such renditions and the board of equalization had approved them and

levied taxes thereon, and that Humble Oil & Refining Company had paid all taxes assessed against them and such seven-eighths interest before such taxes became delinquent.

All other defendants filed answers pleading in effect general demurrer and general denial.

The state of Texas filed a petition in intervention in this cause on January 29, 1929, seeking recovery from plaintiffs (defendants in intervention) of alleged delinquent taxes for the year 1927 with accrued interest, penalties, and costs thereon and foreclosure of tax lien, upon an undivided one-eighth of the oil, gas, and other minerals in place in the ground in the lands described in the Hogg-Hamman mineral deed or lease.

In reply to such petition in intervention, plaintiffs set up as defenses thereto a general denial and also pleaded all the facts set forth in plaintiffs' second amended original petition, which included the allegations that "plaintiffs had no title on January 1, 1927, or since to any of the minerals in place in and under the lands described in said" Hogg-Hamman deed or lease, and plaintiffs "were therefore not taxable in Brazoria County for any portion of said minerals"; and plaintiffs (defendants in intervention) prayed for all relief, both general and special, legal and equitable, that they might be entitled to in law or equity.

The following facts found by the trial court are shown by the undisputed evidence:

Plaintiffs are, and were on January 1, 1927, the owners of the lands in Brazoria county described in their petition, in and under which the oil and other minerals assessed for taxes by the tax assessor of the county for that year as plaintiffs' and defendant oil companies' property was situated. On June 6, 1913, plaintiffs being then the owners of these lands, executed to John Hamman the contract of sale and lease referred to in plaintiffs' petition. This instrument, which is denominated a "Mineral Lease Contract," in its first contractual paragraph declares: "That, for and in consideration of the sum of One Dollar ($1.00) cash in hand to first parties paid by second party, the receipt whereof is acknowledged, and of the covenants and agreements herein embraced and hereby undertaken by second party, first parties do transfer and set over, sell and convey (under the terms and conditions hereof, and for the period and purpose herein set forth) all the gas, oil, sulphur and other minerals and mineral substances whatsoever on, in and under the hereinafter described land, and the exclusive right and privilege to go on and upon said land, and to take possession thereof, for the purposes of drilling for and prospecting therefor, and, after the finding thereof, the development and production of same, and to that end, shall have the right to do and perform all proper and desired acts

and things in the premises, especially the right to use all necessary water thereon or therein, and to erect any and all works and buildings, construct derricks, place machinery, and construct and place all manner of tanks and pipe lines desired."

The fifth paragraph of the instrument has been above set out in copying plaintiffs' pleading. Other terms and provisions of this contract which may be pertinent to the questions discussed and determined in this opinion will be hereinafter set out, or stated in substance.

Plaintiffs, none of whom are residents of Brazoria county, rendered for taxes for the year 1927 all of their property in the county of Brazoria, both real and personal. This rendition of their property did not list or include any part of the unproduced oil or other minerals underlying the lands described in their petition, but contained the following notation by them: "Note: It is not the intention to render any of the oil, gas, sulphur or other minerals in the above lands, as said minerals were transferred, set over, sold and conveyed by Will C. Hogg, Miss Ima Hogg, Mike Hogg, and Tom Hogg to John Hamman per instrument dated June 6, 1913, recorded in Book 125, pages 53 et seq., of the Deed Records of Brazoria County, which instrument covers all of said land."

This rendition was accepted and approved by the tax assessor and commissioners' court of the county, and all taxes levied on the property therein rendered were paid by plaintiffs in December, 1927. The tax assessor, however, placed upon the unrendered roll and assessed for taxes for that year against plaintiffs and the defendant oil companies, jointly, one-eighth of the oil and minerals underlying these lands. None of the taxes accruing upon this rendition and assessment were paid by plaintiffs or the defendant oil companies. These are the taxes the collection of which from them plaintiffs ask to be enjoined, and for which, with interest, penalties, and costs, the intervener, the state of Texas, sought and recovered judgment against plaintiffs in the court below.

The defendant oil companies, each of whom held under transfer and conveyance from John Hamman, separate portions of the oil and other minerals conveyed to him by plaintiffs by the instrument before set out, rendered for taxes and paid the taxes for the year 1927 on seven-eighths of the oil and minerals in and under the several tracts of land described in the respective conveyances to them from Hamman.

The able brief filed by counsel of appellants contains a superabundance of propositions and assignments of error, but we deem it only necessary to discuss and decide a few of these propositions.

The first proposition presented in the brief is: "The court should not have refused plaintiffs an injunction to restrain the tax collector and other tax officials of Brazoria County, Texas, from collecting or attempting to collect from plaintiffs any part or all of the 1927 taxes which were assessed and levied upon an undivided one-eighth (⅛) interest in oil, gas and other minerals in place in lands located in Brazoria County, Texas, because plaintiff did not own such minerals in place in the ground on January 1, 1927, or since then."

If this proposition is sound and sustained by the authorities, the judgment of the trial court must be reversed and judgment here rendered for appellants, granting the injunction asked by them, and setting aside the judgment in favor of the intervener, the state of Texas.

It goes without saying that unless appellants had title and owned on January 1, 1927, the one-eighth interest in the oil and other minerals underlying their lands which was assessed against them and the defendant oil companies, jointly, for taxation for that year, they cannot be held liable for these taxes or any portion thereof. R. S. article 7151; Humble Oil & Refining Co. v. State (Tex. Civ. App.) 3 S.W.(2d) 559. It is well settled that injunction is the proper remedy to protect the taxpayer from any attempt on the part of the state tax officers of the state to collect taxes unlawfully assessed against him. Lively v. Ry. Co., 102 Tex. 545, 120 S. W. 852. It is also well settled that minerals in place may by sale be severed from the land and held separately from the ownership of the land. Texas Co. v. Daugherty, 107 Tex. 234, 176 S. W. 717, L. R. A. 1917F, 989; Humphreys-Mexia Co. v. Gammon, 113 Tex. 256, 254 S. W. 296, 29 A. L. R. 607; Hager v. Stakes, 116 Tex. 453, 294 S. W. 835, 840; Ehlinger v. Clark, 117 Tex. 547, 8 S.W.(2d) 666, 670; Waggoner Estate v. Wichita County, 273 U. S. 113, 47 S. Ct. 271, 71 L. Ed. 566.

The language of the instrument executed by plaintiffs to John Hamman before set out, by apt, plain, and unambiguous words sells and conveys to Hamman "all the gas, oil, sulphur and other minerals in and under" the lands described in the instrument. The main consideration of this conveyance, as shown by the fifth paragraph of this instrument, was the royalties thereafter stated upon the "gross production" of the minerals therein before conveyed to Hamman. The fact that the purpose of the conveyance, as stated in the first paragraph of the instrument and shown by its other provisions, was the exploration and development by Hamman of the mineral resources of the lands, and his title to the minerals was limited and subject to termination under provisions of the lease requiring such development to begin within a fixed time and to be prosecuted with reasonable diligence, and that his right to such minerals after discovery and production was to continue only as long as he continued to produce some of them in paying quantities and to comply with all of his contract undertakings, did not destroy the fee-simple character of his title to the minerals.

It is well settled by the decisions of our Supreme Court that the title of a grantee in such a conveyance is a determinable fee and the holder under such title is the owner of the minerals so long as he continues to comply with his contract agreements. Texas Co. v. Davis, 113 Tex. 321, 254 S. W. 304, 255 S. W. 601.

If this was not so, the grantees could not be held liable for taxes upon any portion of the minerals underlying lands held by them for the development and production of minerals under instruments of this character. Texas Co. v. Daugherty, supra.

The so-called "Mineral Lease Contract" involved in this case is not like the contracts construed by the Supreme Court of this state in the case of Hager v. Stakes, supra, and by the United States Supreme Court in the case of Waggoner Estate v. Wichita County, supra, in that in none of the leases involved in those cases was there a positive unrestricted conveyance by the grantor of all of the oil in and under the leased or conveyed land. In passing upon two of the five leases involved in the Hager Case, our Supreme Court bases its conclusion that the grantor remained the owner of one-eighth of the minerals in and under the land covered by the lease on the absence from the instrument of any express grant of all the minerals, or any authority conferred upon the lessee to appropriate the portion of the oil required to be delivered to the lessor. After reciting these facts, the court says in its opinion:

"On the contrary, each lease, after providing for the delivery of a stated fraction of oil to the lessor, contains this significant language: 'The balance of such oil being the property of lessee.' And, when each lease makes provision for the payment of reasonable royalty on minerals other than oil and gas, it continues, 'and the minerals so produced, royalty excepted, shall be the property of lessee.' * * * And bearing in mind that the minerals or any portion thereof could be severed and separately owned, and that the minerals or a fraction of same could be conveyed, in place, only as a part of the realty, there is no escape from the conclusion that the portion of the oil and other minerals not conveyed, but required to be delivered to the lessor, continued to belong to the lessor, and continued to be realty.

"Such was the conclusion of the United States Supreme Court in the Waggoner Case, where the court said: 'It is to be noted that the leases contain no words of grant of the

minerals as such, but the lands are demised solely for the purpose of drilling and mining. The lessees are in terms given neither title, right of appropriation, nor power of disposition of the share of the oil which is to be delivered to the lessor when severed from the soil. * * * In the absence of controlling authority in the Texas courts, we can find in the terms of the leases themselves no basis for the contention that the lessor granted or conveyed away his entire interest in the oil.' W. T. Waggoner Estate v. Wichita County, 273 U. S. 113, 47 S. Ct. 271, 273, 71 L. Ed. 566.

"The language of each lease to the Atlantic Oil Producing Company, defining the property of the lessee as not all the oil but only the remainder after the delivery of the lessor's portion, refutes the contention that the contracting parties ever intended all the oil to become the property of the lessee. Equally conclusive is the language defining the extent of the lessee's property right in the other minerals save oil and gas."

In another of the instruments construed in the Hager Case, the conveyance of the minerals under the land to the grantee expressly excepts therefrom the royalty reserved to the grantor. As set out in the opinion of the Supreme Court, this conveyance is in the following language: "And, subject to the royalties hereinafter reserved, all of the oil and gas in and under said land is hereby granted and conveyed to the lessee. The royalties reserved by the lessor and which shall be paid by the lessee are: (a) On oil a quantity equal to one-eighth of all produced and saved, the same to be delivered at the wells or to the credit of the lessor in the pipe line to which the wells may be connected; (b) on natural gas, at the rate of $200 per annum * * *; (c) on gas produced from oil wells * * * and is not used for the manufacture of gasoline, at the rate of $25 per annum for each well. * * *"

In commenting upon this language the court says: "We think the parties were about as careful as could have been expected had they invoked the aid of able and experienced counsel to use language in these instruments designed to leave no fair doubt that the lessor was meant to remain the owner, as he was before he executed the instruments, of one-eighth the oil in the leased lands. Making the grant of all the oil and gas subject to the royalties reserved could have had no other rational intent than to except from the minerals conveyed the equal one-eighth part of the oil."

One of these leases does sell and convey all of the grantor's interest in the land, but recites that a part of the consideration for the sale is one-eighth of all the petroleum produced from the land, and that: "This covenant shall run with the land, and on sale of said interest hereby conveyed in said premises, shall pass to and become obligatory upon the successive owners of the right and title hereby conveyed. It is agreed that no obligation is imposed on said J. M. Guffey Petroleum Company, its successors, or any holder of title under it, to drill or operate for oil on said premises, but that I, the said Lee Hager, my heirs and assigns, shall have such part of such petroleum only if and when produced."

In commenting upon these provisions of the lease contract, our Supreme Court says: "We have concluded that, giving effect to all the language of this instrument, it does not grant or convey all the grantor's undivided seventeen-eighteenths of the petroleum in this 150 acres of land, despite the positive terms of the granting and habendum clauses. For we think a dominant purpose of the parties was to make impossible any other disposition of one-eighth of seventeen-eighteenths of this petroleum than its delivery to the lessor, or his assigns, as the property of the lessor or his assigns. Hence no matter how poorly expressed, there being words disclosing such purpose, there is excepted from the grant the one-eighth part of the seventeen-eighteenths of the petroleum. It is obvious that the instrument negatives the view that the obligation to deliver a portion of the oil was intended to a mere personal covenant of the lessee or its assigns. Likewise, the obligation was not meant to inure to the personal benefit of the lessor. It was meant to benefit the owner of an estate in the land and to permanently run with the land."

There is no such covenant in the lease contract in this case as that upon which the court in the case just mentioned based its holding that grantee had not conveyed all of the oil under the land. So the holding of the court in that case, that the grantor in none of the leases involved had parted with his title to one-eighth of the oil produced from the land, is based upon a different contract from the one we are called upon to construe in this case.

We think the able opinion of Chief Justice Cureton in the subsequent case of Ehlinger v. Clark, 117 Tex. 547, 8 S.W.(2d) 666, 670, in construing the oil lease contract involved in that case, fully sustains the conclusion that appellants in this case conveyed to Hamman all of the oil in and under the land, and only became the owners of a one-eighth royalty interest in the oil after it was produced. So long as the oil remained in place in the land and the lessees complied with the provisions of the lease, they held the legal fee title to that part of the realty and the exclusive possession and dominion thereover, and the mere fact that after it was physically severed from the land and became personal property they were obligated, as a consideration for their lease, to deliver one-eighth thereof to appellants, did and could not change or limit

their title to all of the oil as long as it remained unsevered from the land.

This conclusion makes it unnecessary for us to pass upon the many other propositions presented in the brief. It is deemed proper to say, however, that the majority of the court is of opinion that the rule by which the defendant tax authorities arrived at and fixed the value of the one-eighth royalty interest of a lessor who had reserved such interest in his conveyance to the lessee, as shown by the evidence in this case, is violative of the constitutional requirement that all taxes shall be "equal and uniform," and if appellants were the owners of the property so assessed they would be entitled to relief on this ground.

None of the defendant oil companies were necessary parties to the suit, and no relief was asked against them by the plaintiffs. Upon this state of the record the judgment in their favor for costs against appellants cannot be disturbed.

The judgment of the trial court will be reversed, and judgment here rendered for appellants.

Reversed and rendered.