## HYDROCARBON PRODUCTION CO., Inc. v. VALLEY ACRES WATER DIST. et al.

### No. 14146.

United States Court of Appeals Fifth Circuit.

April 27, 1953.

Rehearing Denied May 25, 1953.

214

Victor W. Bouldin, Houston, Tex., Henry D. Lauderdale, Mercedes, Tex. (Vinson, Elkins & Weems, Houston, Tex., Lauderdale & Bowe, Mercedes, Tex., of counsel), for appellant.

Millard Parkhurst, Dallas, Tex., J. E. Wilkins and C. Y. Mills, Mission, Tex. (Strickland, Wilkins, Hall & Mills, Mission, Tex., McCall, Parkhurst & Crowe, Dallas, Tex., of counsel), for appellees.

Before HOLMES, RUSSELL and STRUM, Circuit Judges.

RUSSELL, Circuit Judge.

This appeal presents questions involving the rights of the owner of mineral interests which have been severed from the surface estate in lands in Texas to avoid the imposition of *ad valorem* taxes upon such mineral estates lying within the confines of an irrigation district which has been created by act of the Texas Legislature acting pursuant to complete authority provided by the State Constitution. At its 1951 session, c. 261, Vernon's Ann.Civ.St. following article 8197f, the Legislature of the State of Texas, acting expressly under the

provisions of Section 59, Article XVI of the Constitution of Texas, Vernon's Ann. St., created a conservation and reclamation district within the Counties of Hidalgo and Cameron, to be known as "Valley Acres Water District". Its boundaries were defined and the District, after excepting land in the right-of-way of the International Boundary and Water Commission, containing 133.13 acres, more or less, and specified tracts of land in the North Capisallo District of the lands of the American Rio Grande Land & Irrigation Company, totaling 124.19 acres, is said to contain a total acreage of 10,202.58 acres, more or less. Other provisions of the Act are set forth below.[1]

The appellant, Hydrocarbon Production Company, Inc., sought from the District Court a declaratory judgment that the Valley Acres Water District has not been validly created and does not exist;[2] that the legislative finding of benefits if applicable to its leasehold and mineral estates is palpably wrong, constitutes a gross abuse of discretion and is void; the bonds and purported levy are without effect because issued and made without valid authority; that plaintiff's property which is subject to taxation within the District will not be benefited by the issuance of bonds or the expenditure of the proceeds and, as applied to its property, the same is confiscatory and void and, in the alternative, that plaintiff

1. The Act provided: "The District shall have and exercise, and is hereby vested with all of the rights, powers, privileges and duties conferred and imposed by the general laws of this State now in force or hereafter enacted, applicable to Water Control and Improvement Districts created under authority of Section 59, Article XVI of the Constitution, but to the extent that the provisions of any such general laws may be in conflict or inconsistent with the provisions of this Act the provisions of this Act shall prevail. All such general laws are hereby incorporated by reference with the same effect as if incorporated in full in this Act."

Management and control of the District was vested in a Board of Directors of five members who were granted "all of the powers and authority conferred and imposed upon Board of Directors of Water Control and Improvement Districts organized under the provisions of Chapter 25, Acts of the Thirty-ninth Legislature passed in 1925 and amendments thereto, as incorporated in Title 128, Chapter 3A of Vernon's Civil Statutes of the State of Texas and Amendments thereto. * * * In the event, and to the extent that any of the provisions of the general laws referred to in this Section are in conflict with or inconsistent with any of the provisions of this Act relating to the powers, authority and duties of the Board of Directors and its members, the provisions of this Act shall prevail."

The issuance of bonds by the District was authorized when the question of such issuance "shall have first been submitted to the property taxpaying voters of such District and adopted by not less than a majority of such qualified voters voting at such election."

It was provided that "No bonds shall be issued by the District until the record supporting such bonds and the bonds shall first have been approved by the Attorney General."

When bonds should have been legally voted within the District the Board of Directors were required to "levy a continuing ad valorem tax upon all property within the District sufficient in amount to pay the interest on such bonds and the principal thereof", and to create reserves, and to annually determine and fix the rate of ad valorem tax to be assessed and collected for such purposes. The powers of eminent domain available to water control and improvement districts under the law was granted to the District. The levy of an ad valorem tax against all taxable property in the District for maintenance and operation of the works and facilities of the District, when authorized by an election, was also authorized.

Section 10 contains a legislative finding of benefits as follows: "The Legislature hereby exercises the authority conferred upon it by Section 59, Article XVI of the Constitution, and declares that the District created by this Act is essential to the accomplishment of the purposes of said Constitutional provision, including the conservation and utilization of water, finds that all of the land included therein will be benefited thereby, and declares the District to be a governmental agency, a body politic and corporate, and a municipal corporation."

2. This point is not now insisted upon.

is entitled to a hearing on the question of benefits. Further, that the purported levy of taxes and the creation of bonded indebtedness be removed as a cloud upon title. It was further prayed that the writ of injunction issue restraining the issuance of bonds and the levy of taxes, and for general relief.

The defendant's motion to dismiss, predicated upon the grounds that the complaint failed either to state a substantial Federal question or to set forth a claim upon which relief could be granted, was sustained, and the complaint dismissed. By this appeal, the complainant specifies the order of dismissal as error upon grounds which, summarized, contend that the levy and proposed collection of taxes upon its mineral estates and personal property, without any benefit of any kind, constitutes an arbitrary and palpably wrong exercise of legislative power; that the finding of benefits is contrary to the facts, is palpably arbitrary, and an act of confiscation, and if permitted would constitute taking appellant's property without due process of law and deny it the equal protection of the law, contrary to the Fourteenth Amendment of the Constitution of the United States. It is further contended that in any event specified Texas Statutes [3] entitled appellant to a hearing and an opportunity to have its property excluded from the water district.

A summary of appellant's complaint suffices to present the claimed factual situation relied upon. Thus condensed, the facts alleged are that appellant is the owner of the leasehold and mineral estates in land comprising more than 75% of the territory of the water district of the value of more than $100,000, and has personal property consisting of rigs and oil well equipment within the District of a value exceeding $25,000. Another person, either by himself or by members of personally owned and controlled corporations, is the owner of more than 75% of the surface estate and lands within the district. An irrigation system was already in operation upon the lands. The actual beneficial owners of such a large portion of the surface estate within the District subsequently created conceived a plan to have the Legislature create it, as was done, and to have bonds issued; to sell the existing irrigation system to the District in exchange for a large portion of the bonds, and for taxes to be levied to discharge the bonds, whereby a heavy and disproportionate burden would be placed upon the owner of the mineral estates and personal property within the District, which would not in anywise be benefited by the operation of the District, with the result that the owner of the mineral estates and personal property, although wholly without benefit from the project, would be required to substantially contribute to the great improvement and benefit which the owners of the surface estate would receive from the operation of the water district. Pursuant to this scheme, the bill creating the District was "lobbied" through the Legislature. The Directors of the District have adopted a resolution purporting to authorize the issuance of $1,000,-000 of bonds and to authorize the levy and collection of taxes upon all taxable property in the District for payment of bond principal and interest. Complainant is confronted with the prospect of being forced to bear a heavy and discriminatory burden of taxation without the receipt of any compensating benefit, and wholly to lighten the expense to the owners of the surface estate. No assessment rolls have been prepared nor any opportunity afforded for the rendition of taxes and complainant has grave apprehension of the consequence to it by the future acts of the Directors. There has been no compliance with the provisions of Texas Statutes, Article 7880–76, Vernon's Texas Civil Statutes, which provide for hearings on the question of benefits or exclusion of land or other property from water districts.

■■■ If the facts alleged be true, as must be assumed in testing the legal sufficiency of the complaint, frankness compels the statement that the appellant may be subjected to damage but the question nevertheless remains of whether it will be damage without legal injury. While the

---

3. Article 7880–76, Vernon's Texas Civil Statutes.

Courts, in a proper case, properly assume to determine the validity of an exercise of legislative power by a State Legislature, they do not generally inquire of the motives which prompted the enactment. That the Legislature of the State of Texas has complete and perfect Constitutional power to create the reclamation and conservation district in question may not be questioned. It is equally established, however, that if the consequence and effect of the provisions by which such exercise of the legislative power is effectuated are unconstitutional and invalid when applied to a complainant the Court should so declare and award relief accordingly. So proceeding in this case, we keep in mind the common knowledge that in large areas of the State of Texas the importance of conservation and proper use of water is a matter vital to the public welfare. This truth is recognized by the organic law of that State, as set forth in Article XVI, Section 59(a), Constitution of Texas, which declares that the reclamation and irrigation of the State's arid, semi-arid, and other lands needing irrigation, are "public rights and duties" and directs the Legislature to "pass all such laws as may be appropriate thereto."

Subsection (b) thereof authorizes the creation of "such number of conservation and reclamation districts as may be determined to be essential to the accomplishment of the purposes of this amendment to the constitution which districts shall be governmental agencies and bodies politic and corporate with such powers of government and with the authority to exercise such rights, privileges and functions concerning the subject matter of this amendment as may be conferred by law."

Subsection (c) of Section 59 directs the Legislature to authorize indebtedness necessary to achieve the public purposes therein expressed, which may be evidenced by bonds of such districts, for the payment of which, and the maintenance of such district and improvements, the district is authorized to levy and collect all necessary taxes, provided that the proposition for bonds shall be first submitted to, and adopted by, the qualified voters of such district. These Constitutional provisions have been said to be a mandate which evidences and declares the policy of Texas with reference to the irrigation and drainage of lands within the State.[4]

It is clearly declared by the Texas authorities that the cost and expense of carrying out and effectuating the public purpose for which such districts may be created may be properly raised either by means of *ad valorem* taxation on all property in the district, or by means of a special assessment, where the tax is levied in proportion to benefits.[5] Indeed, the Texas rule accords with the jurisprudence generally.[6] The authorities just cited, and others,[7] likewise declare that when such a district is created by the Legislature in the exercise of its full Constitutional power the owners of property in the district have no Constitutional right to be heard on the question of benefits. "The legislature, when it fixes the district itself, is supposed to have made proper inquiry, and to have

4. Texas & Pacific R. Co. v. Ward County Irrigation Dist. No. 1, 112 Tex. 593, 251 S.W. 212; Dallas County Levee Dist. v. Looney, 109 Tex. 326, 207 S.W. 310.

5. Wharton County Drainage Dist. No. 1 v. Higbee, Tex.Civ.App., 149 S.W. 381, Writ of Error dismissed by the Supreme Court of Texas; Western Union Telegraph v. Wichita County Water Improvement Dist. No. 1, Tex.Civ.App., 19 S.W. 2d 186, affirmed by the Supreme Court of Texas, 30 S.W.2d 301; T. & P. R. Co. v. Ward County Irrigation Dist. No. 1, supra; Hester & Roberts v. Donna Irrigation Dist. Hidalgo County No. 1, Tex. Civ.App., 239 S.W. 992, Writ of Error Refused by the Supreme Court of Texas.

6. Valley Farms Co. v. County of Westchester, 261 U.S. 155, 43 S.Ct. 261, 67 L.Ed. 585; Houck v. Little River Drainage Dist., 239 U.S. 254, 36 S.Ct. 58, 60 L.Ed. 266; Wight v. Police Jury, 5 Cir., 264 F. 705.

7. Among which may be mentioned: Browning v. Hooper, 269 U.S. 396, 46 S. Ct. 141, 70 L.Ed. 330; Brazos River Conservation and Reclamation District v. McCraw, 126 Tex. 506, 91 S.W.2d 665; Smith v. Wilson, D.C., 13 F.2d 1007, 1010, and citations.

finally and conclusively determined the fact of benefits to the land included in the district, and the citizen has no constitutional right to any other or further hearing upon that question." [8] If such an irrigation district created to effectuate the declared public policy of a State be considered in the same status as road improvement districts or navigation districts, as we think is proper upon consideration of the factual and legal situation prevailing in Texas, the authorities establish without question that, "Whether the tax shall be statewide or confined to the county or local district wherein the improvement is made, and whether it shall be laid generally on all property or all real property within the taxing unit, or shall be laid only on real property specially benefited, are matters which rest in the discretion of the state, and are not controlled by either the due process or the equal protection clause of the Fourteenth Amendment." [9] While the case is not directly in point, because dealing with special assessments and not a direct tax, a pertinent observation was made in Roberts v. Richland Irrigation District, 289 U.S. 71, 75, 53 S.Ct. 519, 520, 77 L.Ed. 1038, that "If to meet a general obligation an irrigation district, proceeding under authority granted by the state, should lay a tax distributed according to value, there hardly could be reasonable doubt of its validity under the 14th Amendment." [10] In Parker v. El Paso Co. Water Impr. Dist., Tex.Civ.App., 260 S.W. 667, 672, affirmed 116 Tex. 631, 297 S.W. 737, it is held: "the construction and operation of works for the storage and distribution of water for the irrigation of arid lands is a public use, and all lands embraced within the legal boundaries of a district organized for that purpose may legally be subjected to taxation for the purpose of providing and operating such works and necessary drainage." The Texas Courts, in upholding the exaction from property owners of revenue for discharging the obligations of irrigation districts, have disregarded the particular use to which real estate in the district may be put. The question of benefit has been deemed not controlling in the right to collect such revenue from the owner of a railroad right of way, store buildings, and personal property.[11] As said by the Texas Supreme Court in the T. & P. R. Co. v. Ward County case, supra [112 Tex. 593, 251 S.W. 216], "The power to tax personal property upon an ad valorem basis in a local improvement district has been upheld whenever the question has arisen in this state." As stated in Texas Jurisprudence, Volume 44, Section 175, and supported by citation of authorities, "It seems that almost any character of land may be placed within the limits of these improvement districts. Since the question is purely a political one, the Legislature has power to include in the district lands that will derive no direct benefit from the project such as riparian and other lands having an existing source of water supply * * *. The Constitution itself authorizes the inclusion of municipal corporations in improvement districts." This Texas work summarizes the Texas law as follows: "It seems that the district may tax almost any character of property that has a situs within its boundaries, whether the property receives any benefit from the district's activities or not."[12]

Article 7146 of the Revised Statutes of Texas, provides that "Real property for the purpose of taxation, shall be construed to include the land itself * * * and all the rights and privileges belonging or in any wise appertaining thereto, and

---

8. Fallbrook Irrigation Dist. v. Bradley, 164 U.S. 112, 174, 17 S.Ct. 56, 69, 41 L. Ed. 369.

9. Memphis & Charleston R. Co. v. Pace, 282 U.S. 241, 245, 51 S.Ct. 108, 109, 75 L.Ed. 315, and citations; Wight v. Police Jury, supra; Smith v. Wilson, supra.

10. Citing Fallbrook Irrigation Dist. v. Bradley, supra; French v. Barber Asphalt Paving Co., 181 U.S. 324, 21 S. Ct. 625, 45 L.Ed. 879; Webster v. City of Fargo, 181 U.S. 394, 21 S.Ct. 623, 45 L.Ed. 912.

11. Western Union Telegraph Co. v. Wichita County Water Imp. Dist., supra, and citations.

12. Texas Jurisprudence, Volume 44, Section 192, p. 291.

all mines, minerals, quarries and fossils in and under the same." "The rights and privileges belonging to land contribute in a very substantial way to its value, and it is the theory of the statute that their value shall be included in the valuation of the land for taxation in the hands of the owner. Ordinarily real estate is taxed as a unity; that is to say, the person who owns both the mineral and the surface estates pays but a single tax, based upon the aggregate value of both. When the owner severs the minerals from the remainder of the land by conveyance, exception of reservation, there spring into being two distinct estates, each subject to separate taxation." [13]

Consideration of these principles and especially of the legislative language that the Directors of the District "shall levy a continuing ad valorem tax upon all property within the District", requires the rejection of the contention that the exaction which the statute imposes is a special assessment or local tax. It is a tax to be computed according to value, not according to benefit. The Legislature of Texas has the authority to so provide. The creation of the irrigation district must be held to be a furtherance and implementation of the public policy of Texas and the taxation is for a public purpose.

Further applying the principles above stated it is clear that in this case, where the Legislature itself directly created the district, the appellant has no constitutional right to a hearing on the question of benefits; that in carrying out the expressed constitutional mandate to conserve and use water for the irrigation of arid lands of the State the Legislature could authorize taxes to be imposed ad valorem upon all property within the District without regard to benefit. The fact that such irrigation would result in great benefit to one owner

in the district and little or none to the other does not evidence a palpable and arbitrary abuse of legislative power. Such inequality is inherent in all taxation and in all governmental activities, and in the circumstances here does not run afoul of the Fourteenth Amendment. Determination of the method of taxation is within the province of the Legislature. The owner of a mineral estate and personal property, situated as is the appellant, holds his property subject to the Legislature's exercise of its constitutional power to prescribe taxation ad valorem.

Article 7880–76, Vernon's Texas Civil Statutes, establishes procedure for the creation of conservation and reclamation districts by petition of landowners to the County Commissioners Courts. It is thereby provided that before an election for bonds shall be held landowners shall be afforded a hearing on the question of the exclusion of lands upon the ground, among others, of the absence of benefits to such land. We approve the conclusion of the trial Court that these provisions do not apply to districts created by the Legislature by special act which determined the question of boundaries and benefits, as was done in the present case.

The complaint now before us really attacks only the right and power of the District to tax appellant's property at all. It does not provide a predicate for detemination of any question of discrimination or illegality in the actual assessment and collection of taxes but only a claimed apprehension that inequality and discrimination will follow. We therefore do not now pass upon this feature of the claim and in no wise attempt to adjudicate it.

The trial court did not err in dismissing the complaint.

Judgment affirmed.

13. Texas Jurisprudence, Volume 31A, p. 980. See Downman v. State of Texas, 231 U.S. 353, 34 S.Ct. 62, 58 L.Ed. 264; Hager v. Stakes, 116 Tex. 453, 294 S.W. 835; W. T. Waggoner Estate v.

Wichita County, 5 Cir., 3 F.2d 962; affirmed 273 U.S. 113, 47 S.Ct. 271, 71 L. Ed. 566; Hogg v. Sheffield, Tex.Civ.App., 38 S.W.2d 353; Humble Oil & Refining Co. v. State, Tex.Civ.App., 3 S.W.2d 559.