# DOWNMAN *v.* STATE OF TEXAS.

ERROR TO THE COURT OF CIVIL APPEALS FOR THE THIRD SUPREME JUDICIAL DISTRICT OF THE STATE OF TEXAS.

No. 43.   Submitted November 3, 1913.—Decided December 1, 1913.

While real estate is generally taxed as a unit, separate estates therein may be taxed to the separate owners of such estates, where the title has been severed.

One who has purchased the mineral rights in land with the present right to enter and work the same is not denied equal protection of the law because in his case the mineral rights are taxed to him and the surface estate is taxed to the owner of the fee.

If his mineral rights are not over-assessed it is no defense that the surface estate may be over-assessed.

134 S. W. Rep. 787, affirmed.

THE facts, which involve the validity of an assessment for taxation of mineral rights on lands in Texas which had already been assessed for taxation to the owner of the fee, are stated in the opinion.

*Mr. Robert L. Batts* and *Mr. V. L. Brooks* for plaintiff in error.

*Mr. B. F. Looney,* Attorney General of the State of Texas, *Mr. G. B. Smedley* and *Mr. Knight Stith* for defendant in error.

MR. JUSTICE LAMAR delivered the opinion of the court.

The State of Texas brought suit against Downman to collect taxes on "mineral rights" owned by him in 50,000 acres of land in Llano County. In his answer he contended that he was not liable because the mineral rights were not real estate but mere licenses to work and develop mines in the future; that if real estate they had already been returned by the owners of the surface and, as the latter had already paid taxes on the land, no additional sum could be collected from him. Further, he claimed that the assessments were void as being an unlawful discrimination against the class of persons who, like himself, owned mineral rights separate from the surface estate.

On the trial it appeared that there was no mining in the county, but in many sections there were signs indicating the existence of ore. Prior to 1907 there had been no assessment of mineral either to the owner of the surface or to persons to whom the mineral right had been separately conveyed. In that year the tax-books were made up

as usual, grazing and agricultural lands being assessed at from $2 to $3 per acre. The tax-books were then forwarded to the County Commissioners for equalization of values. Acting in pursuance of instructions from the Comptroller, the Commissioners made order directing the County Taxing Officer to assess mineral rights where they were owned by persons other than the owners of the surface estate. He thereupon examined the public records and secured the names of the grantees in all deeds which conveyed such rights. Without further investigation as to the existence or value of ore, he assessed the owner on the basis of 50 cents per acre, entering the tax in the column headed "Mineral Rights Only." No deduction was made from the amount already entered against the owner of the land proper. The books, with both classes of assessments appearing thereon, were then finally approved and, in due course, the surface owners paid the taxes assessed against them on the land. Downman, for the reasons already stated, refused to pay the sum demanded of him as taxes on mineral rights in the 50,000 acres. His defense was sustained by the District Judge, who held that when the surface owners returned real estate that included every interest connected with the land and consequently Downman could not be held for an additional tax on property or value which had already been assessed to the owner of the surface. The Court of Civil Appeals recognized that if the owner of the land in paying his taxes had, in fact, paid on the mineral rights also, Downman could not be held liable in the present suit. But the judgment of the District Court was reversed for the reason that in approving the books having two assessments—one against land and one against mineral rights in the same tract—the Commissioner had recognized the existence of two separate interests in the same property belonging to two different owners. The Supreme Court of the State declined to interfere and the case was brought here by

writ of error in which Downman renews his attack on the validity of the assessment. He contends that mineral rights when belonging to the owner of the surface were not included in the assessment, but were taxed as soon as they were sold; that such "a tax was discriminatory against owners who, like appellant, own mineral rights in lands, the surface estate of which was owned by others," and that such discriminatory assessment imposes upon the latter an unlawful burden of taxation and takes his and their property without due process of law.

The Texas court recognized that if a mineral right was not an estate, but a mere license to enter and work in the future it was not taxable. It held, however, that the deeds conveying ore, stone and minerals were grants of property and conveyed to Downman title to the mineral with the right to work the same. This title and right was held to be real estate and taxable as such. On this writ of error from the state court we are not concerned with that construction of the statute, nor with the regularity of the method by which the taxes were assessed, nor with the fairness of the valuation. The only Federal question arises out of the contention that there was a discrimination against Downman in taxing him on mineral rights when the same were not taxed if they belonged to the owner of the surface estate. In effect he claims that taxability of mineral rights was made to depend not on value, but on ownership, being taxable after they had been conveyed but not taxable as long as they remained the property of the holder of the surface. The record, however, does not support this position, for it does not appear that the landowner was consciously relieved of taxation on mineral rights known to exist. If the mineral actually added to the value, the law required that it should be represented in the assessment of the land. But if the owner and the Assessor did not know of the existence of ore, there was no injustice nor known discrimination

in assessing it merely as grazing land. When however, an actual sale of the mineral rights in a particular tract was made, and the deed recorded, a new value was brought to light. There was then no reason why the taxing officers should not accept the action of the buyer in paying therefor $1.50 per acre as evidence that the mineral right had a separate value. This right being real estate was taxable, but if assessed against the owner of the surface, the result would have been that he would have had to pay on an interest in the land with which he had absolutely parted. Usually real estate is taxed as a unit; but as different elements of the land are capable of being severed and separately owned, the statute may authorize a separate assessment against the owners of the severed parts. Accordingly if the title has been severed land may be taxed to one, timber to another, or land to one and coal to another. The state court held that such was the law of Texas, in view of the general language of the statute defining real estate as including not only the land itself but the buildings on the land and the minerals under the land. There was, therefore, nothing discriminatory in assessing Downman as owner of the mineral right which had been sold to him and separately assessing the owner of the surface with what remained. That the two owners were thus separately assessed, each on his own property, appears from the fact that both values were separately entered upon the tax-books—Downman's mineral rights, for which he paid $1.50 an acre, being assessed at 50 cents an acre and the surface estate at from $2 to $3 per acre. If the latter was over-assessed it affords Downman no defense. The record discloses no violation of a Federal right and the judgment is

*Affirmed.*