**QUINTANA PETROLEUM CO. et al. v. STATE et al.**

No. 3787.

Court of Civil Appeals of Texas. El Paso.

Feb. 2, 1939.

Appellants' Motion for Rehearing Granted Feb. 23, 1939.

State's Motion for Rehearing Granted in part and Denied in part March 23, 1939.

Further Rehearing Denied April 13, 1939.

Knox W. Gilmore and Harry Holmes, both of Houston, for appellants Quintana and others.

Hobart Huson, of Refugio, for the State.

Crain, Vandenberge & Stofer, of Victoria, for O'Connor.

WALTHALL, Justice.

This is a suit filed by the State of Texas for itself and in its own right, and also in the right and behalf, and for the use and benefit, of Refugio County, Texas, against Thomas O'Connor, Quintana Petroleum Company, Humble Oil & Refining Company, Humble Pipe Line Company, G. M. Oil Company, and others, to recover taxes for the year 1936, alleged to be due and owing to the State of Texas and County of Refugio, upon a 7/32nds interest in the minerals in and under 4,000 acres of land in Refugio County, Texas, covered by an oil, gas and mineral lease from Thomas O'Connor, grantor, to Quintana Petroleum Company, grantee, dated January 19, 1934, and supplemental contract between said parties, of date March 1, 1934, and selected by grantee, as shown by instruments of selection and designation, recorded in Vol. 27, p. 513, of the Deed Records of Refugio County, Texas, and being the portion of the minerals under said land reserved by Thomas O'Connor under subparagraph (d) of paragraph VI of said original lease, as amended by said supplemental contract; plaintiff pleading said lease in haec verba and alleging the ownership of said 7/32nds interest in the minerals to be in Thomas O'Connor, and alleging a valid assessment thereof for taxes for the year 1936, made by the Tax Assessor of Refugio County, Texas, against and in the name of, Thomas O'Connor, on the unrendered roll of said County, prayed for judgment for taxes, cost of investigation of record, and attorneys' fees, and for foreclosure of tax lien.

The petition alleged that said O'Connor had, by instruments referred to, leased said 4,000 acres for oil, gas, sulphur and mineral development to Quintana Petroleum Company, and that said lease in paragraph VI thereof, as amended by said supplemental agreement provided:

"In case of discovery and production by grantee of any oil, gas or other minerals upon and from the leased premises, interests in all of such products and full title thereto are retained by grantor as follows:

"(a) One-eighth (⅛) of all oil produced and saved from said land as long as any production is maintained; * * *

"(b) One-eighth (⅛) of the gas produced from the land and sold or used off the land, or in manufacturing gasoline, including casinghead gas or other gaseous substances.

"(c) One-eighth (⅛) of all other minerals mined and marketed, except should sulphur be produced, then grantee may buy grantor's interest, paying therefor at the rate of One Dollar per long ton.

"(d) In addition to the foregoing reserved interests, there is furthermore reserved to grantor one-fourth (¼) of the remainder of any oil, gas or other minerals produced from said land after the reservations above set forth are made, until the proceeds of the sale (such sale to be at not less than the market price) by grantor of said one-fourth of the remainder shall aggregate two Million Dollars ($2,000,000.00) whereupon this reservation of title to said ¼ interest shall terminate, and this interest shall vest in grantee and its assigns."

The defendants, G. M. Oil Company, and others, filed answer containing, among other things, exceptions of misjoinder of parties, which exceptions were sustained by the court, and all of said defendants dismissed from the suit. These defendants owned in several interests, an aggregate of 1/32nd overriding royalty under the lease, and as the agreed statement of facts shows, the taxes on said 1/32nd interest were duly assessed and paid for the year 1936. No exceptions were taken to the sustaining of said pleas of misjoinder or the judgment of dismissal, and said defendants and the interest owned by them, are not involved in this appeal.

Plaintiff dismissed its cause of action against defendant, Humble Pipe Line Company.

Defendant, Thomas O'Connor, answered by general demurrer, special demurrers and exceptions, general denial, pleaded the terms of the lease, he had no taxable interest in said 7/32nds interest, plea of rendition and payment of taxes by him on the identical land for the year 1936; pleaded invalidity of the assessment and levy of such taxes claimed by plaintiff, and alleging that said 7/32nds interest in the minerals was included in the assessment made by him of his said lands.

Defendants, Quintana Petroleum Company and Humble Oil & Refining Company, filed answers containing general demurrer, special exceptions, general denial, alleged the assessment and payment by them of taxes upon their leasehold interest for the year 1936, and pleaded upon information and belief that the taxes had been paid upon all of said lands for the year 1936.

The court sustained the general demurrer of Thomas O'Connor, holding that under the terms of the lease pleaded by plaintiff, Thomas O'Connor had no taxable interest in the 7/32nds of the minerals reserved by him under subparagraph (d) of paragraph VI of said lease, to which ruling of the court, plaintiff and defendants, Quintana Petroleum Company and Humble Oil & Refining Company each excepted.

Defendants, Quintana Petroleum Company and Humble Oil & Refining Company, urged their general demurrer to plaintiff's petition, which was by the court overruled, to which defendants excepted. The court sustained defendants', Quintana Petroleum Company and Humble Oil & Refining Company, exceptions numbered V, VII and IX, to which plaintiff excepted.

The court overruled defendants' exceptions numbered III, IV and VI, to which defendants excepted.

The case was submitted to the court under an agreed statement of facts, and the court rendered judgment in favor of plaintiff for $9,950, and six percent interest and collector's costs of $1 per year, with foreclosure of lien against said 7/32nds interest in the minerals as to Quintana Petroleum Company and Humble Oil & Refining Company, to which judgment said defendants excepted and gave notice of appeal to the Court of Civil Appeals for the Fourth Supreme Judicial District of Texas, at San Antonio, duly perfected such appeal, and the cause, after being docketed in the court to which it was appealed, was transferred to, and is now before, this Court for review.

### Opinion.

The contentions made by appellants in their first proposition are to the effect: That under the terms of the mineral lease pleaded by appellee the determinable fee title to the 7/32nds part and portion of the mineral in said land was reserved by O'Connor and that said reserved interest

was owned by O'Connor, was assessed for taxes in his name and did not constitute a cause of action against appellants, and for that reason appellants' general demurrer should have been sustained.

Appellee alleged that oil and gas in paying quantities had been discovered on said land and that said mineral lease contract and subdivision (d) of paragraph six quoted in the above statement were in force on January 1, 1936, and at the date of the filing of the suit.

The record shows that O'Connor made a voluntary rendition of his acreage (including the 4,000-acre tract involved here) for taxation for the year 1936, rendering all lands at their agricultural value. He made no separate rendition of the one-half of the one-eighth royalty then retained by him, nor his interests under said subdivision (d) of paragraph six of said lease. The then owners of the 1/32nd interest assigned to G. M. Oil Company, et al, rendered their respective portions of said 1/32nd interest. Quintana Petroleum Company, acting for itself and its co-owner, Humble Oil & Refining Company, made a voluntary rendition for the year 1936 of 20/32nds interest as its leasehold interest in said 4,000 acres. The remaining 7/32nds interest was not voluntarily rendered by anyone.

The assessor of Refugio County placed the 7/32nds interest involved here on his unrendered roll for 1936, assessing same in the name of O'Connor at a valuation of $500,000, and at the same time placed on the unrendered roll all royalty interests owned by O'Connor under leases of his various lands, including the 4,000 acres involved here.

The Board of Equalization of Refugio County convened and notices were given to Quintana Petroleum Company and to O'Connor to show cause why its assessment of the 20/32nds interest should not be raised. Both appeared while the Board was in session. O'Connor appeared only before the County Judge, and disclaimed any interest in the 7/32nds mineral interest; the Quintana representatives appeared before the Board and advised the Board that such interest was owned by O'Connor.

The Board approved the assessment made by the assessor against O'Connor to all mineral interests (including the 7/32nds interest in the 4,000 acres), and approved the voluntary rendition made by O'Connor and appellants.

Appellants paid the taxes for 1936 on the 20/32nds interest in the 4,000 acres, and the owners of the 1/32nd assigned interest paid the taxes on their portions thereof.

The taxes on the 7/32nds mineral interest for 1936 in the 4,000 acres not having been paid this suit was brought.

Appellants defend against the suit for taxes under Article 7329 of the Revised Civil Statutes and the first subdivision thereof, which provides: "There shall be no defense to a suit for collection of delinquent taxes, as provided for in this chapter except: 1. That the defendant was not the owner of the land at the time the suit was filed." The question presented is, whether, under the terms of the mineral lease contract and the agreed facts, for the purposes of taxation, was O'Connor or appellants the owner of the 7/32nds mineral interest in the 4,000 acres of land at the time of the suit?

Three contracts are referred to in the record. The first is an option contract granted by O'Connor to the Quintana Company to explore and prospect for mineral on a larger tract of land and to select therefrom the 3,000 acres, and when selected to be conveyed by a mineral lease to appellant for mining purposes. Appellant was to have a mineral lease, reserving to the grantor certain interests herein expressed and accepted by the grantee. We think we need not further state the terms of that option contract. Later by supplemental contract the acreage was increased to 4,000, and the reservations expressed in the first lease by subparagraph (d) of paragraph six above stated, was amended so that the reservation would continue and read as follows: "In addition to the foregoing reserved interest, there is further reserved to grantor one-fourth (¼) of the remainder of any oil, gas or minerals produced from said land after the reservations above set forth are made, until the proceeds of the sale (such sale to be at not less than the market price) by grantor of said one-fourth of the remainder shall aggregate Two Million Dollars ($2,000,-000.00), whereupon the reservation of title to said ¼ interest shall terminate, and the interest shall vest in grantee and its assigns."

357

The agreed statement shows that O'Connor had received a total credit of $375,-970 on this $2,000,000 reservation up to December 31, 1936.

Appellants' contention, as we understand· it, is that by reason of the above stated reservation in the mineral lease contract, the ownership of the 7/32nds interest in minerals in the 4,000 acres conveyed remained in O'Connor.

■ As we view the reservation expressed in the amended supplemental contract and the disposition to be made of the minerals as stated in the reservation, it applied to "any oil, gas or other minerals produced from said land" until the proceeds from the sale of such minerals should be sufficient to discharge the $2,000,000, at which time the reservation ceased and the title granted vested in the grantee, the lessee, and its assigns. In other words, the $2,000,000 to be paid by the lessee, while a bonus, it was also a part of the consideration to be paid by the grantee for the lease, and agreed to be paid out of the sales of the minerals as produced from the land. The land leased was that embraced in the 4,000 acres described and containing the minerals therein in place. The minerals, when produced or removed from the land, became personal property of the lessee and subject to the reservation, that is, it was to be applied to the discharge of the $2,000,000, and was so applied. To harmonize the lease contract as we view it, the reservation must be applied to the charge of the $2,000,000 when removed from the land. The reservation was not, we think, a condition precedent, but rather a condition subsequent. Such seems to be the construction of the parties to the conveyance. Mineral leases of minerals in place are classed as realty separate and apart from the surface, and are subject to taxation as such. Texas Company v. Daugherty, 107 Tex. 226, 176 S.W. 717, L.R.A.1917F, 989; Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S.W. 290, 29 A.L.R. 566; State v. Downman, Tex.Civ.App., 134 S.W. 787; Downman v. Texas, 231 U.S. 353, 34 S.Ct. 62, 58 L.Ed. 264.

As in the above statement the 7/32nds interest in the minerals was a part of the minerals in place in the 4,000 acres, as much so as any other of the mineral in the land conveyed.

O'Connor having disclaimed to own the 7/32nds interest, we have concluded that appellants owned the 7/32nds interest in· the minerals as a part of the leasehold conveyed at the time of and for the purpose of the suit for taxes. Certainly one or the other owned it.

We also conclude that the assessment for the unrendered taxes was properly made by the tax assessor.

We have not discussed each of the propositions presented, but we have considered each, and believe that what we have said, includes the others not discussed.

We believe the trial court made a proper disposition of the case and that it should be affirmed, and it is so ordered.

### On Motion for Rehearing.

In the original opinion, for the reasons stated, we concluded that appellants were the owners of the 7/32nds interests in the minerals involved in this suit, and for that reason were liable for the taxes sued for by the State.

On considering appellants' motion for rehearing we have concluded that we were in error in so holding.

■ The opinion of the Supreme Court delivered by Judge Greenwood in the case of Sheffield v. Hogg, 124 Tex. 290, 77 S.W.2d 1021, 80 S.W.2d 741, states the law to be applied to the facts of this case. We need only to refer to that case without undertaking to show its application to the facts of this case. In that case Judge Greenwood discusses the principles of law that had theretofore been applied in the cases referred to, and states the law to be applied in this case.

We, therefore, now hold that, under the facts of this case and the law as stated by our Supreme Court, Thomas O'Connor is the owner of ·the mineral interest involved in this suit for purposes of taxation. The trial court was in error in holding otherwise and in the judgment rendered.

Appellants' motion is sustained and judgment is here rendered as above indicated.

### On Further Motion for Rehearing.

NEALON, Chief Justice.

In disposing of the motion for rehearing filed by appellants we failed to dispose of the cross appeal of the State of Texas against cross appellee, Thomas O'Connor. The District Court sustained , general demurrer of O'Connor as against

the allegations of the petition of the State of Texas. Under our view of the case, as reflected in our opinion upon the former motion for rehearing, O'Connor was liable for taxes on the 7/32nd mineral interest. Therefore the District Court erred in sustaining his general demurrer and, as between the State of Texas and O'Connor, the order of this Court will be that the motion for rehearing filed by the State be sustained; the previous judgments will be set aside and judgment is here and now rendered in favor of appellants Quintana Petroleum Company and Humble Oil and Refining Company and reversed and remanded as between the State of Texas and Thomas O'Connor.

All parties are granted fifteen days in which to file motions for rehearing.

The motion for rehearing and to certify of appellee Thomas O'Connor is overruled.