

# THE ATTORNEY GENERAL
# OF TEXAS

GERALD C. MANN

AUSTIN 11, TEXAS

XXXXXXXXXXXXXXXXX
ATTORNEY GENERAL

Honorable Truett Hubbard
County Attorney
Van Zandt County
Canton, Texas

Dear Sir:

        Opinion No. 0-3796
        Re: May the Grand Saline Independent
            School District require a cor-
            poration owning a salt mine in
            said District to pay taxes
            upon the proven and developed
            underground salt deposits ?

        We are in receipt of your letter of July 17, 1941 in which you request the opinion of this department on the questions set out therein as follows:

        "A corporation in the business of mining and selling salt has a large mine located within the limits of the Grand Saline Independent School District. This salt is mined from a rock-salt formation several hundred feet below the surface of said corporation's property. This corporation renders all of its property and equipment for taxes to this school district except its underground salt deposit. It refuses to render these proven and developed underground salt deposits.

        "1. Does the Grand Saline Independent School District have authority to require this corporation which owns a salt mine in its district, to pay taxes upon their proven and developed underground salt deposits ?

        "2. If said school district has authority to require said corporation to pay taxes on its underground salt deposits and said corporation only renders its machinery and equipment and real estate, but does not include these proven and developed underground salt deposits in its real estate

rendition, and fails and purposely refuses to render the same, does the Grand Saline Independent School District have the authority to assess said corporation for its taxes upon its mineral interests therein?"

In your first question you inquire whether or not the school district has the authority to require the corporation to pay taxes upon the proven and developed underground salt deposits.

Article 2784 of the R. C. S. provides in part as follows:

"The commissioners court for the common school districts in its county, and the district school trustees for the independent school districts incorporated for school purposes only, shall have power to levy and cause to be collected the annual taxes and to issue the bonds herein authorized, subject to the following provisions:

"1. * * * and in independent districts for the maintenance of schools therein, an ad valorem tax, not to exceed one dollar on the one hundred dollars valuation of taxable property of the district."

Article 7146 of R. C. S. provides as follows:

"Real property for the purpose of taxation, shall be construed to include the land itself, whether laid out in town lots or otherwise, and all buildings, structures and improvements, or other fixtures of whatsoever kind thereon, and all the rights and privileges belonging or in any wise appertaining thereto, and all mines, minerals, quarries and fossils in and under the same. Id."

Under the above legislative definition of real property all mines, minerals, quarries etc. in and under the land are real property. It is a well settled rule of law

in this state that minerals that have not been severed either by actual severance or by conveyance are assessed as part of the value of the land in and under which the same is located. The Supreme Court of Texas in the case of Texas Company vs. Daugherty, 176 S. W. 717 stated as follows:

"The rights and privileges belonging to land contribute in a very substantial way to its value. They largely cause it to yield its income, and it is the theory of our statute, therefore, that their value shall be included in the valuation of the land for taxation in the hands of the owner. They do not escape taxation by this method; on the contrary, they are subjected to its burden through the inclusion of their value in the assessment of the land; and they are taxed against the owner of the land because the Legislature has deemed it proper for him to bear the charge in view of their essential contribution to its value."

This theory is also stated again by the Supreme Court of Texas in the case of Hager v. Stakes, 294 S. W. 835. The court stated as follows:

"(9) Fifth. Real estate is ordinarily taxed as a unit; yet, where there have been severances by conveyance, exception, or reservation, so that one portion of the realty belongs to one person and other portions to others, each owner should pay taxes under proper assessment against him of the portion owned by him. The fact that a portion may consist of minerals or of a fractional interest therein makes no difference, as outlines in State v. Downman (Tex. Civ. App.) 134 S. W. 795, and Downman v. Texas, 231 U. S. 356, 357, 34 S. Ct. 62, 58 L. Ed. 264."

Unquestionably the Grand Saline Independent School District has the authority to require the corporation in question to pay a tax on its real estate based on its full value which would include the value of the salt deposits in and under the land.

In your second question you state that the corporation has failed and purposely refused to render the proven and developed underground salt deposits. You ask whether the school district has the authority to assess the corporation for taxes on its said mineral interests in the land. Under the decision previously quoted the owner of land is required to make only one rendition of the real property, which rendition should include the full value of the land including the mineral interests therein. The corporation in this case is not required to make a rendition of the mineral deposits in the land separate and apart from the rendition of the value of the land itself. You state in your question that the corporation has rendered the land but that this rendition does not include the value of the underground mineral deposits in the land.

We assume that in the District in question the taxes are assessed and collected by an independent tax assessor-collector of the District under the authority of Article 2791, R. C. S. Under the facts you submit we believe the correct procedure would be for the tax assessor to raise the valuation and submit same to the board of equalization. See Articles 2791 and 1050 R. C. S. and Blewett v. Richardson Independent School District, 240 S.W. 529.

Under the authority of the above quoted Articles if the tax assessor is not satisfied with the rendition of the property made by the corporation in question, it is then the tax assessor's duty to proceed to increase the valuation of such property and submit same to the board of equalization. Unless this is done the rendition of the land carries with it the value of the entire estate, including the mineral interests therein. The Waco Court of Civil Appeals so held in the case of Humble Oil and Refining Company v. State, 3 S. W . 2nd, 559, writ of error refused by the Supreme Court. The court stated as follows:

"Appellants contend that, since the mineral estate had not been severed from eight of said tracts of land on January 1, 1923, and since the owners of the land had rendered said land in its entirety for taxes for 1923, and paid the taxes so assessed and levied, that the attempted levy made by the tax assessor in July, 1924, was illegal and void. We sustain this contention. It is now a well-recognized principal of law that, after the mineral estate has been severed by the owner from the land, same is subject to taxes, and the owner of the mineral estate is liable for taxes to the same extent that property owners are liable for any other tax. State v. Downman (Tex. Civ. App.) 134 S. W. 787; Id., 231 U. S. 353, 34 S. Ct. 62, 53 L. Ed. 264; Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S. W. 290, 29 A. L. F. 566; Texas Co. v. Daugherty, 107 Tex. 226, 176 S. W. 717, L. R. A. 1917F, 989. Until, however, the mineral estate has been severed, the rendition of the land carries with it the value of the entire estate. Article 7146 of the Revised Statutes reads:

'Real property for the purpose of taxation, shall be construed to include the land itself, * * * and all the rights and privileges belonging * * * thereto, and all mines, minerals, quarries and fossils in and under the same.' " (Underlining ours)

It is our opinion that the procedure outlined above is the one that should be followed by the tax assessor to require the property of the corporation in question to be taxed at its full value including the value of the mineral interests contained therein.

We call your attention however to the case of Victory v. Hinson, 71 S. W. (2nd) 365. In that case the rendition sheet of the plaintiff was discussed as follows:

"The plaintiffs rendered said land for taxes to the county tax assessor, but indorsed on said rendition the following notation: 'This does not include the 1/8 royalty under oil lease. The royalty is not subject to taxation against these lessors, see: Ehlinger v. Clark, 117 Tex. 547, 8 S. W. (2nd) 666; Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S. W. 290, 29 A. L. R. 566.' "

The Waco Court of Civil Appeals in an opinion written by Justice Alexander held as follows:

"(4) Plaintiffs' next contention is that the tax assessor had no right to assess their royalty interest in the property, separately from their interest in the surface, but should have assessed all of their interest, whatever it may have been, as a unit. Ordinarily one's entire interest in a particular tract of land should be assessed for tax purposes as a unit. The assessor should not divide said interest into various portions and assess the same separately; but where the owner has himself separated his interest into various portions and thus invited a separate assessment thereof, we see no reason why the property cannot be so assessed. Slater v. Ellis County Levee Improvement Dist. (Tex. Civ. App.) 42 S. W. (2nd) 867, par. 2; Hager v. Stakes, supra, par. 9. In the case at bar the owners rendered for tax purposes their surface interest, but expressly reserved, and purposely refused to render, their royalty interest as reserved in the oil and gas mining leases theretofore executed by them. Under such circumstances, we think the assessor had a right to accept the rendition of the portion so rendered and to separately assess the portion or interest which the owners refused to include in the rendition so made by them. The owners having thus invited a separate assessment of their interest in the property should not now be heard to complain if the assessor accepted their invitation and assessed the property in the manner suggested by them. State Mortgage Corp. v. Ludwig, 121 Tex. 268, 48 S. W. (2nd) 950, par. 5."

In the above case the Waco Court of Civil Appeals declared that the taxpayer had undertaken to specifically exclude the mineral interests from the rendition sheet, and that he then could not complain of the action of the tax assessor in placing the part so excluded on the unrendered roll for taxation purposes. The case was affirmed by the Commission of Appeals of Texas in 102 S. W. (2nd) 194 in an opinion written by Commissioner Hickman. The Court concludes as follows:

"Our holding is limited to this conclusion. If a taxpayer, who owes the duty of rendering his property for taxation, voluntarily undertakes to exclude a portion thereof, even though such portion be an integral part of the whole, from his rendition sheet, the tax assessor is authorized to treat that portion as unrendered property and proceed to list and assess same in accordance with the statutes."

It is our opinion that the mineral interest belonging to the corporation in question is properly taxable as a part of the land in and under which the same is located. Where the rendition fails to include the value of this mineral interest in the land it is the duty of the tax assessor to increase the valuation of the corporation's property to include the value of these mineral interests in the land and to submit the same to the board of equalization. If the corporation's rendition shows on its face that the value placed on the land does not include the value of the mineral interest in and under the land then the tax assessor may assess the same separately upon the unrendered roll for tax purposes and same would be a proper assessment of which the tax payer would be unable to complain.

We trust that the foregoing fully answers your inquiry.

Youes very truly

ATTORNEY GENERAL OF TEXAS

By:   /s/ Billy Goldberg
      Billy Goldberg
                    Assistant

BG:fs
APPROVED JUL 29, 1941

/s/ Grover Sellers

FIRST ASSISTANT
GENERAL ATTORNEY

APPROVED
OPINION
COMMITTEE

By:   BWB
      CHAIRMAN