**GLASSCOCK UNDERGROUND WATER CONSERVATION DISTRICT, Appellant,**

v.

**Royce PRUIT, Chief Appraiser of Glasscock County Appraisal District and Byron Bitner, Chief Appraiser of Reagan County Appraisal District, Appellees.**

No. 08–94–00358–CV.

Court of Appeals of Texas, El Paso.

Jan. 11, 1996.

Rehearing Overruled Feb. 14, 1996.

Daniel H. Byrne, James V. Sylvester, Ford & Ferraro, L.L.P., Austin, for appellant.

Roy L. Armstrong, McCreary, Veselka, Beck & Allen, P.C., Austin, Royce Pruit, Garden City, for appellees.

Before BARAJAS, C.J., and McCLURE and CHEW, JJ.

## OPINION

McCLURE, Justice.

Appellant Glasscock Underground Water Conservation District appeals an adverse trial court judgment on its suit seeking a decla-

ration that it, and not the Santa Rita Underground Water Conservation District, has the right to tax certain severed mineral estates underlying land that the surface owners annexed into Glasscock's district. The trial court concluded that the severed mineral estates were not affected by the surface owners' annexation, and Glasscock appealed to this Court. We affirm the judgment of the trial court.

## FACTUAL AND PROCEDURAL HISTORY

Glasscock County and Reagan County are adjoining counties of West Texas. Glasscock County lies due south of Big Spring, Texas and directly north of Reagan County and the Santa Rita district. In 1989, the 71st Texas Legislature enacted Senate Bill 1634 ("S.B. 1634") which created the Santa Rita Underground Water Conservation District ("Santa Rita"). Act of May 24, 1989, 71st Leg., R.S., ch. 653, § 3, 1989 Tex.Sess.Law Serv. 2153 (Vernon). Santa Rita's territorial boundaries generally coincide with the boundaries of Reagan County, however, the Legislature provided two methods for Reagan County landowners to annex their land into the Glasscock County Underground Water Conservation District ("Glasscock") instead of the Santa Rita district. First, S.B. 1634, § 14(a) excepted from the Santa Rita district "any lands . . . annexed into the Glasscock County Underground Water Conservation District pursuant to Section 51.714 et seq., Water Code . . ." prior to the June 14, 1989 effective date of the act. S.B. 1634, § 14(a). The owners of surface estates in 95 parcels of land in northern Reagan County, some of whom did not own all of the minerals underlying the surface estate, petitioned for annexation into the Glasscock district prior to the effective date of S.B. 1634. The petitions and the descriptions of the land attached to the surface owners' petitions failed to mention these severed mineral interests. Glasscock granted all of the annexation petitions. The owners of the severed mineral interests in these 95 parcels did not file separate petitions for annexation into Glasscock.

Second, S.B. 1634, § 14(b) allowed certain landowners to file a petition to exclude the owner's land from Santa Rita within one year after the legislation's effective date. Twenty-two surface land owners, some of whom did not own all of the underlying mineral interests, filed petitions for exclusion from Santa Rita in accordance with S.B. 1634, § 14(b). Santa Rita granted 21 of the petitions. Each of the 21 successful petitioners then filed for annexation into the Glasscock district pursuant to TEX.WATER CODE ANN. § 52.521 et seq. Glasscock accepted each of the 21 petitions. None of the 21 successful petitions for exclusion from Santa Rita, and none of the 21 petitions for annexation into Glasscock, mention the severed mineral estates. No mineral owner associated with any of the 21 parcels annexed into Glasscock pursuant to S.B. 1634, § 14(b) filed a separate petition for exclusion from Santa Rita or a petition for annexation into Glasscock.

A total of 116 Reagan County surface estate landowners annexed their property into Glasscock pursuant to S.B. 1634, § 14(a) and (b). In tax years 1990 through 1993, the Glasscock County Appraisal District prepared tax rolls for Glasscock that included the surface value, and the value of any mineral interests owned by the 116 surface owners, but excluded the value of any severed mineral interests in the 116 parcels. In the same tax years, the Reagan County Appraisal District prepared tax rolls for Santa Rita that, with the exception of a minor error not relevant to this appeal, included the value of the severed mineral estates in the 116 parcels, but excluded the surface value and the value of any mineral interests owned by the surface owners. No owner of any severed mineral interest in any of the 116 parcels has filed any protest to Santa Rita's taxation of his or her mineral estate.

In 1990, the parties requested an Attorney General's opinion on whether the surface owners' petitions had the effect of annexing the severed mineral estates into Glasscock. The Attorney General concluded that the surface owners' petitions did not affect the severed mineral estates. See Op.Tex.Att'y Gen. No. JM–1221 (1990). Nevertheless, the Glasscock district demanded that the Reagan County Appraisal District delete the severed mineral interests from the Santa Rita tax

rolls, and that the Glasscock County Appraisal District include them on the Glasscock tax rolls. Both Appraisal Districts declined to do so. In 1991, Glasscock filed suit against the chief appraisers of the Glasscock and Reagan County Appraisal Districts and against Santa Rita seeking a declaration that the 116 surface owners' petitions effectively annexed the severed mineral estates into the Glasscock district for all purposes, including taxation.[1] The parties submitted the case to the court on stipulated facts. The trial court found that the surface owners' petitions did not have the effect of annexing the 116 parcels into the Glasscock district. In one point of error, Glasscock asserts that the trial court incorrectly interpreted the Legislature's intent in enacting S.B. 1634 and other provisions of the Water Code, and thereby erred in its determination. For convenience, all appellees will be collectively referred to as "Santa Rita."

### SANTA RITA'S CROSS-POINT

Santa Rita asserts that the trial court erred in failing to find that Glasscock was precluded from filing its lawsuit on the ground that Glasscock failed to exhaust its administrative remedies. We will address Santa Rita's cross-point before reaching the merits of this appeal. A taxing unit that believes an appraisal district has incorrectly identified property taxable by the taxing unit has an administrative remedy in the form of a hearing before the appraisal review board for that district. TEX.TAX CODE ANN. §§ 41.03, 41.05 (Vernon 1992). If the appraisal review board rules against the taxing unit, the taxing unit can appeal the order to a district court for a trial de novo. TEX.TAX CODE ANN. §§ 42.031, 42.23 (Vernon 1992). The parties stipulate that Glasscock did not seek administrative remedies or hearing before any appraisal review board pursuant to the Tax Code.

In most instances, a party must exhaust available administrative remedies before resorting to the courts. *See Webb*

County Appraisal District v. New Laredo Hotel, Inc., 792 S.W.2d 952, 954 (Tex.1990). In this case, however, the parties seek declaratory relief on stipulated facts. The only issue presented is a question of law relating to statutory interpretation of the Water Code and S.B. 1634. Section 41.03 of the Tax Code does not purport to place the resolution of questions of law regarding statutory declarations before the appraisal review board. The administrative reviewing agency in this case therefore is unable to provide the remedy requested: a declaration on a question of law. Thus, the matter is properly before the court without first exhausting administrative remedies. *Houston Federation of Teachers, Local 2415 v. Houston Independent School District*, 730 S.W.2d 644, 646 (Tex.1987) (where administrative reviewing body is unable to afford requested relief, parties may seed redress in the courts before pursuing administrative relief); *Calvin V. Koltermann, Inc. v. Underream Piling Co.*, 563 S.W.2d 950, 954–55 (Tex.Civ.App.—San Antonio 1977, writ ref'd n.r.e.); *Ector County Independent School District v. Hopkins*, 518 S.W.2d 576, 579 (Tex.Civ.App.—El Paso 1974, no writ) (parties may bypass administrative remedies when only question is one of law and not of fact). Accordingly, we overrule Santa Rita's cross-point.

### LAW APPLICABLE TO STATUTORY INTERPRETATION

When the court is confronted with a question of statutory construction, it must first determine whether the statute is ambiguous. *Cail v. Service Motors, Inc.*, 660 S.W.2d 814, 815 (Tex.1983). If the meaning of the statute is clear and unambiguous, extrinsic aids and rules of construction are inappropriate, and the statute should be given its common, everyday meaning. *Cail*, 660 S.W.2d at 815. The contentions of the parties in this case amount to a claim of ambiguity. When an apparent ambiguity exists, the court is to give the statute a reasonable construction in keeping with the legislative intent. *City of Mason v. West Texas Utili-*

---

1. Glasscock also originally sought mandamus relief requiring the chief appraisers of Reagan and Glasscock County Appraisal Districts to include the value of the severed mineral estates in the Glasscock district's tax rolls. The trial court denied mandamus relief and that ruling is not part of this appeal.

*ties Co.*, 150 Tex. 18, 237 S.W.2d 273, 278 (1951). Legislative intent should be determined from the entire act, not from isolated portions thereof. *Acker v. Texas Water Commission*, 790 S.W.2d 299, 301 (Tex.1990). Additionally, the court must consider "the consequences that would follow" from its construction of a statute and avoid absurd results. *Sharp v. House of Lloyd, Inc.*, 815 S.W.2d 245, 249 (Tex.1991). Finally, this Court must keep in mind that the Legislature is assumed to enact a statute with complete knowledge of the existing law and with reference to it. *Acker v. Texas Water Commission*, 790 S.W.2d at 301.

### GLASSCOCK'S POINT OF ERROR

The parties agree that the statutory language is ambiguous. Glasscock argues that the Legislature intended to enable an owner of any interest in a parcel of land in Reagan County to annex all of the various estates in the parcel into the Glasscock district, even if the estates are severed into separate ownerships. In this vein, it argues that either the surface estate owner had the superior right to bind the mineral estate owners, or the first estate owner to file the petition had the right to bind all owners of other estates within the same tract of land. Pursuant to either argument, the 116 surface owners' petitions would have effectively annexed all of the estates in the 116 parcels of land into the Glasscock district. Santa Rita also alleges that the statute is subject to two interpretations: either the mineral interest owners were not contemplated in the statute such that they were unable to opt out of Santa Rita at all, or the statute contemplated that both surface owners or mineral estate owners had the right to opt out but the mineral estate owners chose not to do so. Simply put, Santa Rita argues that the Legislature could not have intended for an owner of one estate in land to have the power to move into one district or the other estates in land which he or she does not own. There appear to be no appellate decisions interpreting the exact language in question in this controversy.

### THE STATUTORY LANGUAGE IN QUESTION

Glasscock correctly asserts that this controversy turns on the interpretation of the Legislative intent behind the annexation provisions of S.B. 1634, § 14(a) and (b) and Water Code §§ 52.521 and 51.714. In this case, S.B. 1634 legislatively created Santa Rita. The Legislature defined the "boundaries" of Santa Rita as "all of the territory located within Reagan County." S.B. 1634, § 3. The Legislature then chose to allow individual owners of property within Santa Rita's boundaries to opt out of Santa Rita in two ways. First, Section 14(a) provided that the act creating Santa Rita would not apply to "any lands which have been annexed into the Glasscock County Underground Water Conservation District pursuant to Section 51.714 et seq., Water Code, prior to the effective date of this Act." S.B. 1634, § 14(a). The applicable version of Section 51.714 [2] of the Water Code provides: "The owner of land may file with the board a petition requesting that the land described by metes and bounds in the petition be included in the district." TEX.WATER CODE ANN. § 51.714 (Vernon Supp.1996). Second, S.B. 1634, § 14(b) allowed "the owner of land" to file a petition with Santa Rita requesting that "the owner's land" be excluded from the district after the effective date of S.B. 1634 and required the petition to describe the land by legal description or by metes and bounds. The bill did not specifically provide a method for landowners proceeding under Section 14(b) to annex into the Glasscock district after they were excluded from Santa Rita. The record reflects, however, that the land owners proceeding under Section 14(b) petitioned for annexation into Glasscock pursuant to TEX.WATER CODE ANN. § 52.521. Section 52.521 provides that "the owner of land" may file a petition requesting

---

**2.** The legislature added additional language to Section 51.714, which is not relevant here, effective September 1, 1989. Because the Santa Rita enabling legislation became effective June 14, 1989, and because S.B. 1634 required land owners using Section 14(a) to annex into the Glasscock district prior to the effective date of the Santa Rita enabling legislation, all landowners petitioning for annexation of their land into the Glasscock district pursuant to Section 14(a) would have been proceeding pursuant to the prior version of the statute.

that "the owner's land," described by metes and bounds or by legal description, be included in the district. TEX.WATER CODE ANN. § 52.521 (Vernon Supp.1996).

## SIGNIFICANCE OF DESCRIPTION REQUIREMENTS

Glasscock argues that the Water Code as a whole is intended to give regulatory entities the ability to deal with certain territories described by metes and bounds or legal description and that to cloud the authority of those regulatory entities with abstract concepts such as severed mineral estates underlying the surface of the regulated territory interferes with the intended purpose of the Code. Glasscock focuses on the language in the relevant statutes requiring the petitioner to describe the land by metes and bounds, or by legal description, in arguing that the Legislature intended for territory to be annexed into the Glasscock district without reference to abstract estates comprising that territory. According to Glasscock's argument, the surface estate owners' petitions served to annex the entire territory, including severed estates, associated with the metes and bounds description of the surface of the subject land. Glasscock relies on Op. Tex.Att'y Gen. No. JM–1115 (1989) in support of its contention. While Attorney General opinions are not binding on this Court, they are persuasive and entitled to consideration. *Commissioners' Court of El Paso County v. El Paso County Sheriff's Deputies Association*, 620 S.W.2d 900, 902 (Tex.Civ. App.—El Paso 1981, writ ref'd n.r.e.).

In *JM–1115*, the Attorney General determined that the Texas Water Commission did not have the authority to create a municipal utility district which covered a specified surface area but excluded minerals more than 300 feet below the surface. The Attorney General reasoned that Sections 54.013 and 54.015 of the Water Code, under which a municipal utility district may be organized, "do not provide that a municipal utility district comprise 'estates' in land; rather they provide that a district comprise 'area' or 'land' whose 'boundaries' are described by 'metes and bounds or by lot and block number.'" JM–1115 at 5, *citing* TEX.WATER

CODE ANN. §§ 54.013, 54.015. "Boundaries" ordinarily are limits established laterally on the surface of the land, and do not extend vertically to mark a district's limits underground or in the airspace. JM–1115 at 6, *citing Doria v. Suchowolski*, 531 S.W.2d 360, 364 (Tex.Civ.App.—San Antonio 1975, writ ref'd n.r.e.). Thus, metes and bounds provide a two-dimensional measurement of land. They describe the land for purposes of identification, not for purposes of defining the interest or estate owned. *Sharp v. Fowler*, 151 Tex. 490, 252 S.W.2d 153, 154 (1952). Relying on the fact that the statutes required that a petition to establish a district had to describe the "boundaries" of the district by "metes and bounds or by lot and block number," the Attorney General found that the boundaries marked the surface limits of the territory over which the district has jurisdiction unfettered by considerations of severed sub-surface ownership. JM–1115 at 6.

## SIGNIFICANCE OF "OWNERSHIP"

This controversy, however, does not involve the establishment of initial boundaries for Santa Rita. Rather, it stems from the Legislature's decision to allow individual landowners to opt out of the Santa Rita district. JM–1115, upon which Glasscock relies, recognizes the distinction noting that the language of another part of the same statute, Section 54.701, indicates that "the class of property that may be excluded from the boundaries of the district by its governing body *after* the initial petition to create the district has been approved by the Water Commission is greater than that which the commission may consider when deciding whether to approve the initial petition." JM–1115 at 7. Specifically, Section 54.704 allows a "property owner" in the district to petition for the exclusion of "land or other property" after the district is created. TEX.WATER CODE ANN. § 54.704 (Vernon 1972). This language, like the language at issue here, refers not to the initial establishment of a boundary or territory for the district, but to an option for individual owners to remove their land or property from the district. Thus, Section 54.704 allows mineral estate owners to petition for exclusion of their "property" from the boundaries of the

district after the district's creation. JM–1115 at 10. When interpreting an owner's right to act with regard to his or her property under the Water Code, as opposed to a district's authority to annex territory, Texas courts have held that mineral estate owners must be treated as separate owners with rights separate from those of the surface estate owner. *See Nueces County Water Control & Improvement Dist. No. 4 v. Wilson,* 304 S.W.2d 281, 285–86 (Tex.Civ.App.—El Paso 1957, writ ref'd n.r.e.) (owners of severed mineral estates may petition for exclusion from a water control and improvement district without regard to the surface estate); *City of Corpus Christi v. Cartwright,* 288 S.W.2d 836, 837–38 (Tex.Civ. App.—San Antonio 1956, writ ref'd) (owners of severed mineral estates must be counted separately from owners of surface estates in determining whether a majority of landowners petitioned to create a water improvement district).

▇▇▇ We must determine whether, in enacting Section 51.714, Section 52.521 and S.B. 1634, the Legislature intended for the owners of severed estates in land to have the ability to choose whether to remain in Santa Rita, or to opt into Glasscock. We therefore find it particularly significant that the Legislature used the phrases "the owner of land" and "the owner's land" in the relevant statutes. In addition to the above-cited case law finding that individual owners, including mineral estate owners, are to be treated separately under Water Code provisions authorizing individual options, Texas law has long generally recognized that minerals underlying the surface of land are subject to separate ownership. Minerals in place are realty and, as such, are subject to ownership, severance, and sale. *Hager v. Stakes,* 116 Tex. 453, 294 S.W. 835 (1927); *Texas Co. v. Daugherty,* 107 Tex. 226, 176 S.W. 717 (Tex. 1915). A grant or reservation of mineral interests by the fee owner creates two separate and distinct estates: an estate in surface and an estate in mineral. *Acker v. Guinn,* 464 S.W.2d 348 (Tex.1971); *Atlantic Ref. Co. v. Noel,* 443 S.W.2d 35 (Tex.1968). Real estate ordinarily is taxed as a unit; yet, where there has been a severance by conveyance, exception, or reservation, so that one

portion of the realty belongs to one person and other portions to others, each owner should pay taxes under proper assessment against the portion owned. *See Hydrocarbon Production Co., Inc. v. Valley Acres Water Dist.,* 204 F.2d 212 (5th Cir.1953), *cert. denied,* 346 U.S. 825, 74 S.Ct. 44, 98 L.Ed. 350 (1953). The fact that a portion may consist of minerals or of a fractional interest therein makes no difference. *Hager,* 294 S.W. at 842; *State v. Downman,* 134 S.W. 787 (Tex.Civ.App.1911), *aff'd,* 231 U.S. 353, 34 S.Ct. 62, 58 L.Ed. 264 (1913). In fact, the Tax Code provides:

Sec. 1.04. Definitions.

In this title:

(2) 'Real property' means:

   (A) *land;*

   (B) an improvement;

   (C) a mine or quarry;

   (D) *a mineral in place;*

   (E) standing timber; or

   (F) an estate or interest, other than a mortgage or deed of trust creating a lien on property or an interest securing payment or performance of an obligation, in a property enumerated in Paragraphs (A) through (E) of this subdivision. [Emphasis added].

TEX.TAX CODE ANN. § 1.04(2) (Vernon 1992).

Section 25.04 further provides:

Except as otherwise provided by this chapter, when different persons own land and improvements in separate estates or interests, each separately owned estate or interest shall be listed separately in the name of the owner of each if the estate or interest is described in a duly executed and recorded instrument of title.

TEX.TAX CODE ANN. § 25.04.

▇▇▇ Presuming that the Legislature acted with complete knowledge of and reference to the existing law applicable to ownership of severed mineral estates, we find that it intended by its use of the terms "the owner of land" and "the owner's land" to limit the effect of an owner's petition for exclusion or annexation to that interest or estate in the land that the petitioner actually owned. If,

as Glasscock argues, the Legislature intended for "any owner" of any estate in a parcel of land to annex all of the estates into Glasscock, we believe that the Legislature would have used the term "an owner of land," rather than using "the owner of land" and would not have further referenced "the owner's land."

In this context, the requirement that the landowner provide a metes and bounds or legal description of the owner's land in the petitions is merely a method of location and description and does not indicate the Legislature's intent to enable the owner of the surface estate to annex the severed mineral estates in order to keep an entire "territory" together. Significantly, the statutes interpreted as requiring treatment of severed mineral estates separately from the surface estate in both *Nueces County* and JM–1115 require the "owner" of the given property to describe it by metes and bounds or a legal description. *Nueces County,* 304 S.W.2d at 285; JM–1115 at 7. As we have noted, to describe land is "to outline its boundaries so that it may be located on the ground, and not to define the estate conveyed therein." *Sharp v. Fowler,* 151 Tex. 490, 252 S.W.2d 153, 154 (1952).

We thus disagree that the surface owners had the authority to petition on behalf of the owners of the mineral estates underlying the surface. Instead, we conclude that, particularly when addressing property taxation, we must apply traditional notions of property law.

### LEGISLATIVE HISTORY

Our interpretation is consistent with the recorded legislative history which indicates that the Legislature was motivated to create these options because of the varying uses of the surface land within Reagan County. It appears that Glasscock County, served by the Glasscock district, and a portion of the northern region of Reagan County are comprised of farming operations having compatible needs and uses for underground water. The southern region of Reagan County, however, appears to be comprised of ranch land. Ranch land has uses for underground water that differ from those of farming operations.

The Legislature apparently recognized that while it makes sense for compatible water uses and interests to be governed by the same underground water conservation district, it could not pick and choose specific properties to include in or exclude from Santa Rita. It is reasonable to infer from the legislative history that the Legislature compromised by initially including all of Reagan County in Santa Rita and then allowing individual Reagan County land owners to choose the appropriate district for their particular land use. Thus, the legislative history makes it clear that the Legislature recognized individual choice dictated by land use concerns when it enacted S.B. 1634.

### ABSURD RESULTS

Glasscock asserts that the trial court's decision will produce absurd and unconstitutional results. We disagree and address the allegedly absurd outcomes in turn.

*Impermissible Concurrent Jurisdiction*

First, Glasscock argues that because the Santa Rita and Glasscock districts overlap in their territorial boundaries, they impermissibly exercise concurrent jurisdiction over the same water. Glasscock is correct in asserting that two governmental entities may not exist at the same time over the same territory for the same purpose. *See City of Nassau Bay v. City of Webster,* 600 S.W.2d 905, 909 (Tex.Civ.App.—Houston [1st Dist.]), *writ ref'd n.r.e.,* 608 S.W.2d 618 (Tex.1980); *City of Pelly v. Harris County Water Control & Improvement Dist. No. 7,* 145 Tex. 443, 198 S.W.2d 450, 452 (1946). While it may appear at first that Glasscock and Santa Rita overlap in territory when the surface estate is in one district and the underlying severed mineral estate is in the other, the nature of the districts prevent them from exercising impermissible concurrent jurisdiction. The authority and jurisdiction of an underground water district is to "provide for the conservation, preservation, protection, recharging, and prevention of waste of the underground water of underground water reservoirs or their subdivisions and to control subsidence caused by withdrawal of water from those underground water reservoirs or

their subdivisions...." Tex.Water Code Ann. § 52.021 (Vernon Supp.1995) (now repealed). The term "underground water" means "water percolating below the surface of the earth and that is suitable for agricultural, gardening, domestic, or stock raising purposes, but does not include defined subterranean streams or the underflow of rivers." Tex.Water Code Ann. § 52.001(6) (Vernon 1995). Pursuant to this opinion, and that of the trial court, when the surface owners annexed their land into the Glasscock district, they annexed all of the interests in the land that they owned. The owner of the surface estate in land owns the underground water. *Bartley v. Sone*, 527 S.W.2d 754, 759–60 (Tex.Civ.App.—San Antonio 1974, writ ref'd n.r.e.). The surface owner's petitions therefore had the affect of annexing the underground water into the Glasscock district. The Glasscock district thus has jurisdiction over the underground water underlying the surface of the 116 parcels of land annexed into the district. Santa Rita and Glasscock do not exercise concurrent jurisdiction over the same underground water.

### Unequal Taxation

■■■■ Glasscock also asserts that, in some instances, ownership of the mineral estate underlying one parcel of land is split between the surface owner and another person. Glasscock argues that in those instances, the same minerals will be illegally subjected to unequal taxation because part of the minerals are taxed by Glasscock and part are taxed by Santa Rita. The parties have stipulated that the Santa Rita district has higher tax rates than the Glasscock district. All taxable property located in a special district must be uniformly taxed. *Wheeler v. City of Brownsville*, 148 Tex. 61, 220 S.W.2d 457, 461 (1949). We have already determined, however, that the severed mineral estates are not located in the Glasscock district, but remain in the Santa Rita district. Although there is no physical boundary between the minerals and the surface, or between the minerals owned by the surface estate owner and the minerals owned by the severed mineral estate owner, Texas law recognizes the separate estates as property under separate ownership. *Acker v. Guinn*,

464 S.W.2d at 352. Just as owners of property adjoining a different taxing authority may not argue that their property is improperly taxed differently than property incorporated within the adjoining taxing authority, Glasscock may not support its position by arguing that severed mineral estates that were not annexed into its jurisdiction are taxed differently than mineral estates that were annexed into its jurisdiction. *See City of Pasadena v. Houston Endowment, Inc.*, 438 S.W.2d 152, 157 (Tex.Civ.App.—Houston [14th Dist.] 1969, writ ref'd n.r.e.). Further, no property owner, be it surface or mineral interest owned, is paying taxes to both entities.

### CONCLUSION

Accordingly, we find that the trial court correctly determined that the surface owners' petitions in this case had the effect of annexing into the Glasscock district only so much of the surface and mineral estates as the petitioner owned and no more. The statutes in question gave each owner of an estate in land in Reagan County the right to petition for annexation of that estate into the Glasscock district. Because the severed mineral estate owners chose not to annex their estates, the severed mineral estates remain in the Santa Rita district for all purposes, including taxation. Having considered and overruled Glasscock's point of error and Santa Rita's cross-point of error, we affirm the judgment of the trial court.